**Richard HULL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0504–CR–298.**

Court of Appeals of Indiana.

Dec. 30, 2005.

Christina Rose Klineman, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Richard Hull appeals from his sentence after he pleaded guilty to two counts of Murder. He presents three issues for our review, which we restate as:

1. Whether Hull was denied due process because the sentence imposed upon resentencing after appeal was greater than that imposed at his original sentencing.
2. Whether the trial court violated Hull's Sixth Amendment right to have aggravating factors determined by a jury.
3. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

The State raises one issue on cross-appeal, namely, whether the trial court abused its discretion when it allowed Hull's belated notice of appeal.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On October 25, 2000, the bodies of Andrew Cataldi and Tricia Nordman were found in a dumpster in Marion County. Both were killed by gunshot wounds. The State charged Hull and Sarah Pender with two counts of murder. Hull, Pender, and the victims had been roommates.

Hull pleaded guilty to both counts under a plea agreement. The agreement provided for a maximum sentence of ninety years executed. At the original sentencing hearing, Hull argued that Pender had been the shooter and testified regarding letters that she had allegedly written, accepting full responsibility for the murders. The trial court found two mitigators, namely, Hull's guilty plea and duress from Pender, and four aggravators, namely, Hull's prior criminal history, his prior probation revocation, the degree of planning of the murders, and the fact that two people were killed. The trial court sentenced Hull to sixty-five years on each count, with ten years of the second count to run consecutive to the first count, for a total executed sentence of seventy-five years. On appeal this court reversed and remanded for resentencing within the parameters of the plea agreement and the law. *Hull v. State*, 799 N.E.2d 1178 (Ind.Ct.App.2003) ("*Hull I* ").

On May 4, 2004, Hull appeared for resentencing. The parties agreed to incorporate the evidence presented at the original sentencing hearing. The trial court found the same aggravators as it had at the original sentencing. But the court also found an additional aggravator, namely, Hull's perjured testimony, based on Hull's notarized affidavit that was attached to Pender's petition for post-conviction relief, in which affidavit Hull contradicted his testimony at the original sentencing hearing by stating that he was the actual shooter and that the letter from Pender used at his original sentencing was a forgery. The trial court identified as a mitigator Hull's acceptance of responsibility and his guilty plea and then sentenced him to sixty-five years with twenty years suspended on each count, to be served consecutively, for a total executed sentence of ninety years.

On February 25, 2005, Hull requested permission to file a belated notice of appeal. The State objected, and Hull filed a

successive petition to file a belated notice of appeal. The trial court granted Hull's request, and this appeal ensued.

## DISCUSSION AND DECISION

### Cross–Appeal [1]

The State asserts that the trial court abused its discretion when it granted Hull permission to file a belated notice of appeal. Thus, the State argues that Hull's appeal should be dismissed for lack of jurisdiction. We disagree.

■ Indiana Post–Conviction Rule 2 permits a defendant to seek permission to file a belated notice of appeal. The rule provides in part:

> Where an eligible defendant convicted after a trial or plea of guilty fails to file a timely notice of appeal, a petition for permission to file a belated notice of appeal for appeal of the conviction may be filed with the trial court, where:
>
> (a) the failure to file a timely notice of appeal was not due to the fault of the defendant; and
>
> (b) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.

Ind. Post–Conviction Rule 2(1). Although there are no set standards defining delay and each case must be decided on its own facts, a defendant must be without fault in the delay of filing the notice of appeal. *Baysinger v. State*, 835 N.E.2d 223, 224 (Ind.Ct.App.2005). "Factors affecting this determination include the defendant's level of awareness of his or her procedural remedy, age, education, familiarity with the legal system, whether he or she was informed of his or her appellate rights, and

whether he or she committed an act or omission that contributed to the delay." *Id.*

■ A hearing on a motion to file a belated notice of appeal should be held where the motion raises a genuine factual dispute concerning the existence of grounds for relief. *Green v. State*, 593 N.E.2d 1237, 1238 (Ind.Ct.App.1992). In determining the existence of a genuine factual dispute concerning the grounds for relief, the court is entitled to consider the court's records in the case. *Id.*

■ Whether a defendant is responsible for the delay is a matter within the trial court's discretion. *Baysinger*, 835 N.E.2d at 224. "Although we acknowledge that the trial court is generally in a better position to weigh evidence and judge witness credibility and we defer to that discretion, such is not always the case." *Id.* Where, as here, the trial court does not hold a hearing before granting or denying a petition to file a belated notice of appeal, the only bases for that decision are the allegations contained in the motion to file a belated notice of appeal. *See id.* Because we are reviewing the same information that was available to the trial court, we owe no deference to its findings. *Id.* Thus, we review the grant of Hull's motion de novo. *See id.*

The State alleges that Hull's successive motion to file a belated notice of appeal "simply alleges that he was without fault in failing to file a timely notice of appeal because the trial court did not inform him at his sentencing that he could appeal his sentence and that he has been diligent in seeking permission to file a belated notice of appeal." Appellee's Brief at 18. The State asserts that Hull did not meet his

---

1. Because the issue raised by the State on cross-appeal implicates this court's jurisdic-tion, we address that issue first.

burden of proving those allegations. But the State does not dispute that the trial court failed to inform Hull at the resentencing hearing of his right to appeal his sentence. And in his motion, Hull alleged that the trial court did not inform him of his appellate rights after he was resentenced, that he was entitled to have pauper counsel appointed to represent him on appeal, that he did not "sleep on his rights[,]" and that he was "diligent in trying to maintain his appellate rights." Appellant's App. Vol. I at 72. We are unaware of any other evidence that Hull could have attached in support of his motion.

The case of *Baysinger* is on point. Baysinger pleaded guilty in an open plea. Four years later, he filed a petition to file a belated notice of appeal, which the trial court denied. On appeal, Baysinger claimed that the trial court should not have denied his petition because both the trial court and his trial counsel had failed to inform him of his appellate rights.[2] We agreed with Baysinger and reversed. In response to the State's challenge that Baysinger had failed to meet his burden of proof under Indiana Post–Conviction Rule 2, we noted that Baysinger had filed an affidavit and attached the transcripts of his guilty plea and sentencing hearings. "Given the procedural posture of Baysinger's sentencing challenge, we are unaware of any additional information that he could have attached in support of his petition." *Id.* at 225.

Here, Hull alleged in his motion that the trial court did not advise him of his appellate rights at the resentencing hearing and that he was diligent in pursuing his right to appeal the new sentence. The State does not dispute that Hull was not advised of his appellate rights at resentencing. As in *Baysinger*, we are unaware of any addi-

tional information that Hull could have provided in support of his motion.

 It is well-settled that a person who pleads guilty is entitled to contest on direct appeal the merits of a trial court's sentencing decision where the trial court has exercised its discretion. *Collins v. State*, 817 N.E.2d 230, 231 (Ind.2004). Here, the trial court failed to inform Hull of his appellate rights when he was resentenced. Hull filed his motion to file a belated notice of appeal less than one year after the resentencing hearing. On these facts, we conclude that the trial court did not abuse its discretion when it granted Hull's motion to file a belated notice of appeal.

## Appeal

### *Standard of Review*

 Hull contends that the trial court abused its discretion when it imposed a ninety-year executed sentence. The determination of the appropriate sentence rests within the discretion of the trial court, and we will not reverse the trial court's determination absent a showing of manifest abuse of that discretion. *Bacher v. State*, 722 N.E.2d 799, 801 (Ind.2000). The trial court's wide discretion extends to determining whether to increase the presumptive sentence, to impose consecutive sentences on multiple convictions, or both. *Singer v. State*, 674 N.E.2d 11, 13 (Ind.Ct. App.1996). If the sentence imposed is authorized by statute, we will not revise or set aside the sentence unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *McCann v. State*, 749 N.E.2d 1116, 1121 (Ind.2001).

---

**2.** At sentencing, the trial court informed him that if he pleaded guilty, "most of the reasons

for appeal disappear ...." *Baysinger*, 835 N.E.2d at 225.

Hull asserts that he was denied due process because a greater sentence was imposed upon resentencing after appeal, that the trial court violated his Sixth Amendment right to have aggravating factors determined by a jury, and that his sentence was excessive in light of the nature of the offense and the character of the offender. We address each contention in turn.

### Issue One: Due Process [3]

■ Hull first contends that he was denied due process when the trial court imposed a greater sentence at resentencing than it had imposed at the original sentencing hearing. We cannot agree. "[U]pon resentencing a defendant, a sentencing court cannot 'impose a more severe penalty than that originally imposed unless the court includes in the record of the sentencing hearing a statement of the court's reasons for selecting the sentence that it imposes which includes reliance upon identifiable conduct on the part of the petitioner that occurred after the imposition of the original sentence.'" *Hicks v. State*, 729 N.E.2d 144, 146 (Ind.2000) (quoting Ind. Post–Conviction Rule 1(10)(b)). Here, the trial court relied upon identifiable conduct by Hull that occurred after the imposition of the original sentence when it imposed a greater executed sentence.

The trial court originally imposed a sixty-five year sentence on each count, with ten years of the sentences to be served consecutively, for a total of seventy-five years executed. In the prior appeal, we held that the "law [did] not authorize the [delayed] sentence imposed on Hull." *Hull I*, 799 N.E.2d at 1182. On remand for resentencing, the trial court again imposed a sixty-five year sentence on each murder count with twenty years suspended on each count. But at resentencing the trial court ordered that the sentences be served consecutively, for a total executed sentence of ninety years.

At the resentencing hearing, the trial court found the same aggravators as it had found at the original sentencing. But the court also found "an additional aggravating factor, which [arose since the original sentencing], which, actually, is very serious. [Hull] appears to have committed perjury in an effort to help his co-defendant manipulate her way out of a criminal conviction for [the] very serious offenses of murder." Transcript of Resentencing at 15. Specifically, after the original sentencing, Hull signed a notarized affidavit claiming full responsibility for the actual shooting in the murders. That statement controverts his testimony at the original sentencing that Pender was the shooter. In the affidavit Hull also stated that the letter from Pender that he testified to at the original sentencing, in which Pender claimed that she had been the shooter, was a forgery.

The trial court identified Hull's perjury as a factor it considered when determining Hull's new sentence. The perjury occurred after the original sentencing. Thus, because the trial court relied on identifiable conduct by Hull that occurred after the original sentencing, we conclude that the trial court did not err when it imposed an increased sentence.

Still, Hull relies on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), in which the Court held that the imposition of a greater sentence on a criminal defendant after a successful appeal of his conviction would be a denial of due process. But *Pearce* is inap-

---

**3.** Hull relies in part on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in support of his argument on this issue. We address all of Hull's claims under *Blakely* in Issue Two.

posite because Hull did not appeal his conviction. Rather, Hull successfully appealed only his sentence.

■ While *Pearce* does not apply on these facts, we note that "the harm that the *Pearce* case seeks to prevent upon resentencing is not the imposition of greater sentences but the 'vindictiveness of a sentencing judge' for a defendant's successful appeal of the court's holding." *Hicks v. State*, 729 N.E.2d 144, 146 (Ind. 2000). "There is no presumption of vindictiveness even in cases where the court increases a defendant's sentence over that of his or her original sentence." *Id.* at 147 n. 5. Hull has presented no evidence that his increased sentence was the result of vindictiveness. Thus, his claim of vindictiveness is without merit.

■ Hull also claims that the trial court

> improperly admitted material into evidence at the time of [re]sentencing that had neither been authenticated nor admitted to by defendant. Defense was not given proper notification of the State's intent to use this material nor were they given the opportunity to cross examine the author of the material, the co-defendant (an interested party).

Appellant's Brief at 6. Aside from the reference to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which is discussed below, Hull provides no citation to law or to the transcript in support of his argument that any material was improperly admitted at the resentencing hearing. Because he does not support any of his contentions on this issue with meaningful argument or citations to the record, he has waived that claim for appellate review. *See* Ind. Appellate Rule 46(A)(8)(a). Further, there is no indication that Hull objected to the admission of the challenged evidence, which also constitutes waiver.

### Issue Two: Blakely

Hull next asserts that the trial court violated his Sixth Amendment right to have aggravating factors determined by a jury in violation of *Blakely*, 542 U.S. 296, 124 S.Ct. 2531. We cannot agree. "[W]e will apply *Blakely* retroactively to all cases on direct review at the time *Blakely* was announced." *Smylie v. State*, 823 N.E.2d 679, 690–91 (Ind.2005), *cert. denied*, 74 U.S.L.W. 3272, 126 S.Ct. 545 (2005). *Blakely* was decided fifty days *after* Hull was resentenced. Hull did not file a timely notice of appeal and, thus, Hull's direct appeal was not pending at the time *Blakely* was decided. It was nearly ten months after *Blakely* that Hull filed his motion to file a belated notice of appeal. In short, although it was later revived, Hull's case was not on direct review when Blakely was decided. *See Robbins v. State*, Cause No. 03A04–0504–PC–192, 839 N.E.2d 1196, 2005 WL 3536284 (Ind.Ct.App. Dec. 28, 2005) (holding that *Blakely* did not apply to a case that was final but not on direct review when *Blakely* was decided and in which the trial court later allowed a belated appeal). Accordingly, Hull's claims under *Blakely* must fail.

### Issue Three: Nature of the Offense

■ Hull also argues that the "maximum possible sentences should be reserved for the worst offenders and offenses and the facts known to the judge at the time of [re]sentencing did not warrant a finding of the maximum." Appellant's Brief at 9. In addressing this rule, we have observed:

> There is a danger in applying this principle that is illustrated in the instant case. If we were to take this language literally, we would reserve the maximum punishment for only the single most heinous offense. In order to determine

whether an offense fits that description, we would be required to compare the facts of the case before us with either those of other cases that have been previously decided, or—more problematically—with hypothetical facts calculated to provide a "worst-case scenario" template against which the instant facts can be measured. If the latter were done, one could always envision a way in which the instant facts could be worse. In such case, the worst manifestation of any offense would be hypothetical, not real, and the maximum sentence would never be justified.

This leads us to conclude the following with respect to deciding whether a case is among the very worst offenses and a defendant among the very worst offenders, thus justifying the maximum sentence: We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.

*Brown v. State,* 760 N.E.2d 243, 247 (Ind. Ct.App.2002), *trans. denied.*

In this case, Hull and Pender murdered two of their roommates. At the original sentencing, the trial court noted the

> degree of care and planning exercised by [Hull] and [Pender] .... [T]hey went on a shopping spree of sorts for some instruments of death, including a shotgun and some deer slugs, which might be inferred to be to inflict severe dam-

age and/or death. Also, that [sic] their steps after the—the facts after the kills were that [Hull] and Ms. Pender transported the individuals and dumped them in a dumpster across town, or nearby.

*Hull,* 799 N.E.2d at 1181. Hull also has a criminal history[4] and a prior probation revocation. Further, Hull agreed to a cap on his sentence of ninety years in his plea agreement. Considering these facts, we cannot say that the trial court abused its discretion when it imposed the maximum sentence.

Hull also "takes exception" to two of the aggravators used by the trial court to enhance his sentence, namely, the degree of planning for the murders and the fact that there were two murders.[5] Appellant's Brief at 9–10. We cannot agree that the trial court abused its discretion when it considered the challenged aggravators to enhance Hull's sentence. Sentencing determinations are governed by Indiana Code Section 35–38–1–7.1. Under Indiana Code Section 35–38–1–7.1(a)(2), "the court shall consider the nature of circumstances of the crime committed" when determining what sentence to impose. As noted above, we review trial court sentencing decisions only for an abuse of discretion, including a trial court's decision to increase the presumptive sentence because of aggravating circumstances. *Powell v. State,* 769 N.E.2d 1128, 1134 (Ind.2002).

The evidence showing Hull and Pender's careful planning of the murders shows the deliberate nature of the crime. Together they shopped for a gun and deer slugs, and, after the murders, they transported

---

4. According to the presentence investigation report, Hull's criminal history consists of two convictions for Minor Consuming Alcohol and one conviction each for Operating a Motor Vehicle While Intoxicated, Driving While License Suspended, and Public Intoxication, all misdemeanors. Hull also has two felony convictions, one for Auto Theft and one for Residential Entry.

5. As noted above, *Blakely* does not apply. Thus, Hull's claim that the challenged aggravators should have been found by a jury is without merit.

the bodies and disposed of them. The degree of planning for the murders and the fact that two people were murdered are part of the nature and circumstances of the crime, and the trial court was required to consider those factors when determining Hull's sentence. *See* Ind.Code § 35–38–1–7.1(a)(2). We conclude that the ninety-year executed sentence is not inappropriate in light of the nature of the offenses and the character of the offender.

Affirmed.

BAKER, J., and BAILEY, J., concur.