**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 18 2014, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK A. DUFF**
Duff Law, LLC
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

FILIBERTO RIVERA,                      )
                                       )
   Appellant-Defendant,                )
                                       )
      vs.                            )        No. 82A04-1305-CR-264
                                       )
STATE OF INDIANA,                      )
                                       )
   Appellee-Plaintiff.                 )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No.  82D02-1206-FC-684

**March 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Filiberto Rivera appeals his convictions for Class C felony burglary, Class D felony theft, and two counts of Class B misdemeanor criminal mischief, arguing that the evidence is insufficient to sustain them. He also argues that the trial court erred in ordering one criminal-mischief sentence to be served consecutively to his other concurrent sentences. Finding sufficient evidence and no abuse of discretion in sentencing, we affirm.

## Facts and Procedural History

On June 20, 2012, Evansville law-enforcement officers were conducting rolling surveillance on a black, two-door Acura. Around 1:30 a.m., after temporarily losing sight of the Acura, officers spotted it parked outside Jaya's Authentic Foods, a local restaurant that was closed for construction. While officers watched, two men dressed in dark clothing ran out of Jaya's, got into the Acura, and drove away. Tr. p. 50. Officers approached Jaya's and checked for signs of entry. They observed damage to the restaurant doors.

Meanwhile, other officers followed the Acura, which parked in an apartment-complex parking lot near Lawndale Shopping Center. *Id.* at 59. Officers saw two men get out of the Acura and approach the shopping center. The men were out of sight for a short time, but then reappeared atop the roof of the shopping center, above Rogers Jewelers. *Id.* at 61. After moving around the roof for five or ten minutes, an audible alarm went off, and the men quickly returned to the Acura and drove away. *Id.* at 62. Officers checked the roof for signs of entry into Rogers Jewelers. A ventilation shaft had

2

been removed and the door to an air-conditioning room above the jewelry store had been pried open. Through the ventilation shaft, officers saw footprints and displaced ceiling tiles. *Id.* at 30, 157-58, 196-97.

The Acura then traveled to Evansville's west side, and officers continued to follow it. Around 3:00 a.m., the Acura parked in another apartment-complex parking lot. *Id.* at 68. Two men got out of the Acura and walked toward Taste of China, a nearby restaurant. A short time later, the two men were spotted on the restaurant roof. Lights and movement were seen at different areas inside the restaurant. *Id.* at 72, 305.

Officers who had stationed themselves at different positions around Taste of China converged on the restaurant. Inside, the restaurant was in disarray: the cash register was open and money had been removed. *Id.* at 35-36. Electronics, including a laptop and video-game console, were piled near the door. *Id.* at 35, 75. The restaurant's large air-conditioning unit had been moved, and the night sky was visible through the ceiling. *Id.* at 36, 76. Officers found two men dressed in black clothing, Rivera and Myles Robinson, lying on the roof. A red Nike sports bag filled with tools, including screwdrivers, was found nearby. *Id.* at 84, 92, 588. Both men were arrested.

The officers took Rivera to the Vanderburgh County Sheriff's Department for questioning. After waiving his Miranda rights, Rivera told detectives that he and Robinson had been dropped off at Taste of China by an unknown man in a white car. *Id.* at 384, 386. He admitted that he and Robinson had entered Taste of China through a hole where the air-conditioning unit had been. *Id.* at 426. Rivera said when he saw police

3

approaching Taste of China, he got nervous and climbed back to the roof without taking anything. *Id.* Rivera denied being present at Jaya's or Lawndale Shopping Center. *Id.*

The State charged Rivera with twenty-four counts, which were later consolidated to seven:

1. Class C felony burglary (Taste of China)
2. Class D felony theft (Taste of China)
3. Class B misdemeanor criminal mischief (Taste of China)
4. Class C felony attempted burglary (Rogers Jewelers)
5. Class C felony attempted burglary (Jaya's restaurant)
6. Class B misdemeanor criminal mischief (Jaya's restaurant)
7. Class B misdemeanor criminal mischief (Rogers Jewelers)

*See* Appellant's App. p. 11 (CCS); Tr. p. 702-09.

At Rivera's trial, the State presented physical and circumstantial evidence tying him to Lawndale Shopping Center and Taste of China.[1] The State told the jury that the Acura driven to Jaya's, Lawndale Shopping Center, and Taste of China belonged to Rivera's mother. A forensic scientist testified that footprints found on the roofs of Lawndale Shopping Center and Taste of China matched the tread of the Timberland boots Rivera was wearing when he was arrested. *See* State's Ex. 210-213. The State introduced evidence of damage and repair costs for Lawndale Shopping Center ($100) and Taste of China ($1000). Tr. p. 32, 36. Officers present at Taste of China recounted watching two men enter the restaurant and move around, and described the open cash register and electronics stacked by the door. The officers also described locating Rivera and Robinson on the roof, and the sports bag filled with tools nearby. In addition, detectives who interviewed Rivera after his arrest recounted his admission that he entered Taste of China. The State also disputed the suggestion that a third man named Sean

---

[1] Robinson was tried separately. *See* Appellant's App. p. 20 (CCS, motion to sever).

4

Lucci was involved, explaining that authorities could locate no one by that name or a similar name.[2] *See id.* at 355-60.

The State also introduced transcripts of several calls Rivera made to family members during his trial.[3] During one call, Rivera told his mother that he lied to detectives about being dropped off at Taste of China by an unknown man. *Id.* at 519 ("I lied to [the detective] you know[,] I said you know I was dropped off."). In another call, Rivera told his fiancée—Robinson's sister—to instruct Robinson on what to say when he testified. *Id.* at 540-47.

Rivera testified and gave his account of the night's events. He said that he drove the Acura to Jaya's and Lawndale Shopping Center, but waited in the car while Robinson and Lucci went inside. *Id.* at 610-12. He said that he drove to Taste of China but waited in the car while Robinson and a man he did not know went inside. *Id.* at 611-13. After hearing a loud noise, Rivera got "upset and scared" and went up on the roof to see what was happening. *Id.* at 614. Rivera said that he called out to Robinson until Robinson "popped his head out of the hole [in the roof]." *Id.* at 616. Rivera claimed that he and Robinson then argued until police arrived, but he "did not go into [Taste of China] at all." *Id.* at 621. Robinson made similar claims when he testified on Rivera's behalf. Robinson explained that he broke into Jaya's, Rogers Jewelers, and Taste of China to support his drug habit, and that Rivera was not aware of or involved in this plan. *Id.* at 575-76.

---

[2] It is not clear from the record who first provided the name Sean Lucci. Robinson testified that the alleged third man involved in the night's events was Sean, but he said that he did not know his last name. Tr. p. 572.

[3] Rivera's objection to this evidence was overruled. Tr. p. 465.

The jury found Rivera guilty of four of the seven charges: Class C felony burglary (Count 1, Taste of China), Class D felony theft (Count 2, Taste of China), and two counts of Class B misdemeanor criminal mischief (Count 3, Taste of China and Count 7, Rogers Jewelers). Appellant's App. p. 30-32, 36. In sentencing Rivera, the trial court found his criminal history, which included five previous felony convictions—including convictions for burglary and theft—to be an aggravating factor. *See* Tr. p. 835, 837. The court found no mitigating factors. *Id.* at 837.

The court sentenced Rivera to seven years on Count 1, two years on Count 2, 180 days on count 3, and 180 days on Count 7, with 316 credit days. The court ordered concurrent sentences on Counts 1, 2, and 3, but ordered Count 7 to be served consecutively to the others. *Id.*

Rivera now appeals.

## Discussion and Decision

On appeal, Rivera argues that the evidence is insufficient to sustain his convictions for burglary, theft, and two counts of criminal mischief. He also argues that the trial court erred when it ordered one of his sentences to be served consecutively to the other three.

## I. Sufficiency of the Evidence

Rivera argues that the evidence is insufficient to sustain his convictions. When reviewing an insufficient-evidence claim, we "consider[] only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence. If a reasonable finder of fact could determine from the evidence that the

6

defendant was guilty beyond a reasonable doubt, then we will uphold the verdict." *Baker v. State*, 968 N.E.2d 227, 299 (Ind. 2012) (citation omitted). We do not reweigh the evidence or judge witness credibility—those evaluations are reserved for the trier of fact. *Id.* (citations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Id.* (citation omitted).

### A. Burglary and Theft

In order to convict Rivera of Count 1, Class C felony burglary, the State was required to prove beyond a reasonable doubt that he broke and entered Taste of China with the intent to commit theft inside. *See* Ind. Code § 35-43-2-1; Tr. p. 701. "Circumstantial evidence alone is sufficient to sustain a burglary conviction." *Baker*, 968 N.E.2d at 230. To prove that Rivera committed Class D felony theft, the State was required to prove beyond a reasonable doubt that Rivera knowingly or intentionally exerted unauthorized control over Taste of China's property with the intent to deprive the restaurant of any part of its value or use. *See* Ind. Code § 35-43-4-2; Tr. p. 702. Like burglary, a theft conviction may be based on circumstantial evidence alone. *Mork v. State*, 912 N.E.2d 408, 411 (Ind. Ct. App. 2009).

The State presented sufficient evidence from which the jury could reasonably conclude that Rivera committed burglary and theft. Footprints found on Taste of China's roof matched the Timberland boots Rivera was wearing when he was arrested, and in his first interview with detectives, Rivera admitted entering the restaurant after 3:00 a.m. At trial, the State explained that the men gained access to Taste of China by moving the air-

7

conditioning unit, damaging it in the process. An officer observing the restaurant testified that he saw lights and movement at different areas inside. When Rivera and Robinson, both wearing black clothing, were caught on the restaurant roof, authorities saw that the restaurant had been ransacked: the cash register was open and money was missing, and electronics, including a laptop and video-game console, were piled near the door. Officers found a sports bag filled with screwdrivers and other tools nearby. In concluding that Rivera committed burglary and theft, the jurors, as triers of fact, were entitled to reject Rivera's alternate description of the night's events, particularly in light of the incriminating statements he made in phone calls to family members during his trial.

### B. Criminal Mischief

There is also sufficient evidence to support Rivera's convictions for two counts of criminal mischief—Count 3 (Taste of China) and Count 7 (Rogers Jewelers). In order to convict Rivera of Class B criminal mischief as charged, the State was required to prove beyond a reasonable doubt that he recklessly, knowingly, or intentionally damaged or defaced Taste of China's and Rogers Jewelers' property without the consent of either entity. *See* Ind. Code § 35-43-1-2(a)(1); Tr. p. 703, 709.

The evidence set forth previously is sufficient to sustain Rivera's conviction for criminal mischief as to Taste of China. In addition to Rivera's presence at the scene, there was significant circumstantial evidence that he and Robinson moved Taste of China's air-conditioning unit to gain access to the restaurant. At trial, one law-enforcement officer testified that the unit was so heavy that one man alone could not

8

move it.  *See* Tr. p. 146.  The owner of Taste of China testified that the unit was damaged when it was moved and cost $1000 to repair.  From this, a jury could reasonably conclude that Rivera committed criminal mischief.

There is also sufficient evidence to sustain Rivera's conviction for criminal mischief as to Rogers Jewelers.  The State produced physical evidence—footprints matching the Timberland boots Rivera was wearing when he was arrested—placing Rivera on the roof of the shopping center just above the jewelry store.  When officers checked the roof for signs of entry into Rogers Jewelers, they saw that a ventilation shaft had been removed and the door to an air-conditioning room above the store had been pried open.  Through the ventilation shaft, the officers saw footprints and displaced ceiling tiles.  At Rivera's trial, a witness testified that repair to this area of the shopping center cost $100.  Although Rivera maintains that he waited in the car and was not involved in breaking into the jewelry store, the jury was entitled to determine that Rivera's claim was not credible and could have reasonably concluded that he committed a second count of criminal mischief.

## II. Consecutive Sentencing

Rivera also contends that the trial court erred when it ordered a consecutive sentence on Count 7, Class B misdemeanor criminal mischief.  We will reverse sentencing decisions, including the imposition of consecutive sentences, only upon a showing of abuse of discretion.  *Hull v. State*, 839 N.E.2d 1250, 1254 (Ind. Ct. App. 2005).

9

A trial court may impose consecutive sentences "if warranted by the aggravating circumstances" under Indiana Code section 35-50-1-2. *Monroe v. State*, 886 N.E.2d 578, 579 (Ind. 2009). It is well settled that a single aggravating circumstance may justify consecutive sentencing. *Mathews v. State*, 849 N.E.2d 578, 589 (Ind. 2006); *Gilliam v. State*, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009).

Here, the trial court ordered Rivera's 180-day sentence on Count 7 (criminal mischief for Rogers Jewelers) to be served consecutively to his aggregate seven-year sentence on Counts 1, 2, and 3 (burglary, theft, and criminal mischief for Taste of China). In sentencing Rivera, the trial court noted a single, undisputed aggravating circumstance—Rivera's five previous felony convictions, including convictions for burglary and theft—and found that there were no mitigating circumstances.

Rivera argues that, contrary to the trial court's finding, there were a number of mitigating circumstances. *See* Appellant's Br. p. 23-24. Defense counsel's sole argument regarding mitigation was that the crimes "appeared to be calculated to avoid violence of any kind." Tr. p. 835. On appeal, Rivera appears to refer to this argument in claiming that the trial court erred in rejecting as a mitigating circumstance that the crimes "neither caused nor threatened serious harm to persons or property, or that [he] did not think it would do so." Appellant's Br. p. 23. But as our Supreme Court has said, whether or not to accept proffered mitigators is "the trial court's call." *Anglemyer v. State*, 868 N.E.2d 482, 493 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). We cannot say that the trial court erred by declining to give mitigating weight to the contention that

this offense neither caused nor threatened serious harm, particularly in light of the evidence of financial damage.

The remaining alleged mitigating circumstances, including the hardship Rivera's incarceration would impose on his family, were not argued before the trial court. *See* Tr. p. 835. This fact is fatal to Rivera's claim. A trial court does not abuse its discretion in failing to consider a mitigating circumstance not raised at sentencing. *See Anglemyer*, 875 N.E.2d at 200. The trial court did not err in sentencing Rivera.[4]

Affirmed.

RILEY, J., and MAY, J., concur.

---

[4] Rivera also suggests that the trial court erred because it did not discuss potential mitigating circumstances—it only stated that there were none. *See* Appellant's Br. p. 24-25. But a trial court is not required to expressly reject every potential mitigating circumstance. *See Stidham v. State*, 637 N.E.2d 140, 144 (Ind. 1994) (Trial court was "not required to make an affirmative finding expressly negating each potential mitigating factor.").