## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 13 2018, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief,
Criminal Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jomanda E. Gee,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 13, 2018<br><br>Court of Appeals Case No.<br>18A-CR-1278<br><br>Appeal from the Vigo Superior Court<br><br>The Honorable Michael J. Lewis, Judge<br><br>Trial Court Cause No.<br>84D06-1410-MR-2576 |

**Mathias, Judge.**

[1] In an appeal from the Vigo Superior Court, Jomanda Gee ("Gee") challenges her sentence of sixteen years for voluntary manslaughter as inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] In September of 2014, Gee lived with her boyfriend, Corey Pryor ("Pryor"). Her five-year old son, ("K.G."), lived with Gee and Pryor. Gee's mother lived in an apartment across the hall from their second-story apartment. Although Pryor was living with Gee, Pryor was married. His wife, who lived in Mississippi with their seven year-old-daughter, was expecting Pryor's return to Mississippi so that they could repair their relationship.

[4] Pryor and Gee had been in a physical altercation the day of Pryor's death. Gee told police that Pryor poured bleach on her, hit her in the mouth and cut her in the leg with a knife from the kitchen. After Pryor cut her in the leg, Gee took the knife from Pryor and stabbed him in the chest. Pryor stumbled down a flight of stairs and collapsed onto the sidewalk. Gee followed him, still carrying the knife. Gee indicated to a passerby that Pryor had been stabbed by a man running down the street. The passerby took Gee's phone from her and called the police. Gee left. A short while later, Gee returned to the scene and watched police from behind a nearby dumpster before approaching police. Pryor died as a result of his stab wound.

[5] Gee told police that her son had been across the hall at her mom's apartment during the altercation. However, Gee's mother told investigators that K.G. came to her apartment and told her that Gee had stabbed Pryor. When K.G. and Gee were visiting at the police station before her interview, K.G. asked Gee why she stabbed Pryor. When she indicated to her son that Pryor had stabbed her too, her son responded, "You the one that start it[?]" Ex. Vol, Def.'s Ex. F, p. 2. Although Gee indicated to police that she was able to take them to the place where she left the knife, it was never recovered.

[6] Gee was charged with murder, aggravated battery as a Level 3 felony, battery by means of a deadly weapon as a Level 5 felony, and domestic battery as a Level 6 felony. The parties entered into a plea agreement, and on March 15, 2018, Gee pleaded guilty but mentally ill to the amended charge of voluntary manslaughter as a Level 2 felony. The State agreed to dismiss the remaining charges, and the parties further agreed that Defendant's sentence would not exceed sixteen years.

[7] Community Corrections evaluated Gee but denied placement due to the violent nature of the offense. Another program called Next Steps also deemed Gee not eligible for admission.

[8] The trial court held a sentencing hearing on April 20, 2018. At this hearing, the trial court heard victim impact statements from Pryor's family members, including Pryor's father, aunt, and minor daughter. The trial court also heard testimony from a clinical psychologist and a domestic violence expert.

[9] The clinical psychologist, Dr. Jeffrey Huttinger ("Dr. Huttinger") concluded that Gee was suffering from Post Traumatic Stress Disorder (PTSD) as a result of prior domestic abuse. Dr. Huttinger concluded that when she stabbed Pryor, Gee acted to get away from an imminent threat or danger. Dr. Huttinger also determined that Gee was suffering from depression but could not determine if it was due to experiences prior to incarceration or due to her incarceration. He recommended intense psychological treatment, as Gee had never received treatment for her PTSD. He further recommended treatment outside of the Department of Correction as he believed it to be more readily available.

[10] The domestic violence expert, Dr. Carla Fisher ("Dr. Fisher") testified that Gee had a difficult life, had expressed remorse for what she had done, and had difficulty talking about her past. Dr. Fisher believed that because of Gee's history of abuse and the nature of the domestic homicide in this situation, Gee was unlikely to reoffend. Dr. Fisher also testified that she believed Gee killed Pryor out of self-defense.

[11] The State introduced evidence of Gee's prior acts, including a burglary of a home belonging to a man who had paid Gee for sex. Gee's attorney read a statement on Gee's behalf which expressed her sorrow for her actions.

[12] After considering the evidence presented at the sentencing, the numerous victim impact statements, and the presentence investigation report, trial court entered a conviction for voluntary manslaughter and sentenced Gee to the Department of Correction ("DOC") for sixteen years. The trial court recommended that she

receive mental health counseling and be placed in a therapeutic community program while incarcerated. The trial court also recommended that Gee be placed in Rockville Correctional Facility so that she could be close to her ailing mother. Gee appeals this sentence.

## Discussion and Decision

[13] Gee challenges her sentence as inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that the court on appeal "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[14] Still, we must and should exercise deference to a trial court's sentencing decision because Rule 7(B) requires us to give "due consideration" to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Trainor v. State*, 950 N.E.2d 352, 355 (Ind. Ct. App. 2011) (quoting *Stewart v. State,* 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)), *trans. denied*. Although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to "leaven the outliers" and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve what we perceive to be a "correct" result in each case. *Fernbach v. State*, 954 N.E.2d

1080, 1089 (Ind. Ct. App. 2011) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)), *trans. denied.*

[15] The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). Whether a sentence is appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell,* 895 N.E.2d at 1224. It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[16] A plea agreement is contractual in nature and binds the defendant, the State, and the trial court. *Hull v. State*, 799 N.E.2d 1178, 1182 (Ind. Ct. App. 2003). The trial court is given the discretion to accept or reject a plea agreement, and if the trial court accepts the agreement, it is strictly bound by its terms. *Id. See also* Ind. Code § 35-35-3-3(e). A defendant may challenge a sentence as inappropriate even when a trial court imposes a sentence in accordance the terms of a plea agreement. *Childress*, 848 N.E.2d at 1080.

[17] For her Level 2 felony conviction, Gee faced ten to thirty years in prison and up to $10,000 in fines. Ind. Code § 35-50-2-4.5. A Level 2 felony carries an advisory sentence of seventeen and one-half years. *Id.* However, pursuant to her plea agreement, Gee faced a maximum sentence of only sixteen years of incarceration.

[18]     Here, considering the nature of the offense, there are few offenses more serious than taking another's life. Many of Pryor's family members came forward to express the significant impact of their grief.

[19]     While Gee told investigators that her five-year-old son was not present when she stabbed Pryor, evidence exists in the record to show that her son was indeed present. Gee's mother told police that K.G. had come to her apartment and told her that Gee had stabbed Pryor, showing the crime was likely committed in the presence of a minor child. The record also contains evidence that Pryor had poured bleach on Gee and had attacked her with the knife prior to her taking the knife and stabbing him, demonstrating she was instigated or likely acting in self-defense.

[20]     Gee had no prior criminal history. And while Gee had been less than straightforward with investigators regarding whether her son was in the room and whether she could lead the police to the location of the knife, she did freely give a statement that implicated herself.

[21]     Gee suffers from PTSD due to abuse in prior relationships and a traumatic childhood. The domestic violence expert believed that it was unlikely that Gee would reoffend under these circumstances.

[22]     Gee received less than the advisory sentence of seventeen and one-half years. The trial court indicated it believed the plea agreement to be very favorable and that sixteen years was a reasonable sentence. The trial court also recommended

placement in a therapeutic community and that she receive mental health counseling.

## Conclusion

[23] Given the serious and violent nature of the crime, as well as the character of the offender, we cannot conclude that Gee's sentence of sixteen years executed in the DOC for voluntary manslaughter was inappropriate.

[24] Affirmed.

Bailey, J., and Bradford, J., concur.