**Warren GUTERMUTH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 10A01–0509–CR–410.

Court of Appeals of Indiana.

June 7, 2006.

Transfer Granted Aug. 24, 2006.

---

See also, 817 N.E.2d 233.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

In this belated appeal, Warren Gutermuth challenges his twenty-four-year aggregate sentence for three counts of class C felony child molesting. We affirm.

### Issues ·

We restate the two issues Gutermuth presents as follows:

I.  Whether he may challenge his sentence pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and

II. Whether the trial court properly sentenced him.

### Facts and Procedural History

Between June and October 1995, Earl and Dorinda Riley and their three children lived with the eighty-one-year-old Gutermuth in his Jeffersonville home. One day, when Earl and Dorinda were out of the home, Gutermuth put his finger "inside the private[s]" of their seven-year-old twin daughters. Appellant's App. at 14–15 (probable cause affidavit). Gutermuth told the girls not to tell anyone and that they would get in trouble or he would get mad if they did. *Id.* at 15. On September 19 or 20, 1995, Gutermuth touched the penis of the Rileys' eight-year-old son over his clothing and told him not to tell anyone. *Id.*

The police conducted an investigation, and Gutermuth took a polygraph examination on March 5, 1996. Following the examination, which indicated deceptive responses, Gutermuth admitted to molesting all three children. *Id.* at 18. He stated that he did so because he suspected that someone else was molesting them, and he believed that if he touched them inappropriately, then they would tell him who else was touching them. *Id.* On March 15, 1996, the State charged Gutermuth with two counts of class B felony child molesting and three counts of class C felony child molesting. On June 17, 1996, the State amended the charging information to add twenty-one counts of class A misdemeanor child exploitation.

The matter was set for jury trial on January 7, 1997. On that date, before a jury was selected, Gutermuth agreed to plead guilty to three counts of class C felony child molesting, in exchange for the State's dismissal of the remaining charges, with sentencing left to the trial court's discretion (also known as an "open plea"). The court informed Gutermuth of the rights he would forfeit by pleading guilty,

including "the right to appeal [his] conviction to the Indiana Supreme Court or the Indiana Court of Appeals, as the case might be." Tr. at 8. The court determined that Gutermuth's plea was voluntary and advised him of the possible sentencing range. In establishing a factual basis for the plea, the State incorporated by reference, without objection, the probable cause affidavit and two exhibits related to the polygraph examination. The court accepted Gutermuth's plea, entered judgment on the convictions, and set the matter for sentencing.

On February 18, 1997, Gutermuth filed a motion to strike the presentence investigation report and to exclude reference to prior arrests or uncharged acts. At the sentencing hearing on February 21, 1997, the trial court ruled on the motion [1] and sentenced Gutermuth as follows:

> The Court has reviewed all of the factors in this particular case, and I would emphasize that Indiana Code Section 35–38–1–7.1(a) says the Court shall mandatorily review certain factors, the risk that the Defendant will commit another crime. And this Court is of the belief based upon what I've heard and my review of this particular case that there is that particular risk. Number two, the nature and circumstances of the crime committed. I simply state for the rec-

ord, I have considered the nature and circumstances of the crime committed as mandated. Number three, I have considered that Mr. Gutermuth has no prior criminal record. I have considered his character and I have considered his condition. Number four is not applicable to this particular case. That's the age of the children. That's a part of the [child molesting] statute itself. So that's not applicable. Number five isn't applicable. Number six, I have considered the oral statements reduced in paragraph form in the Pre–Sentence Investigation Report of the victim's parents in this particular case. I go through the aggravating circumstances in this particular case and I'm going to recognize the following as aggravating circumstances. Firstly, given the nature of these particular offenses, I do believe that the person, Mr. Gutermuth, is in need of correctional rehabilitative treatment that can best be provided by commitment to a penal facility. Number four, I do believe that an imposition of a reduced sentence or a suspended sentence or a suspension of a sentence and imposing probation would depreciate the seriousness of this particular offense. I recognize Mr. Gutermuth's age, and I'll address that later on. But at the same

1. The trial court stated:

> As to the Motion to Strike the Pre–Sentence Investigation Report, I won't strike the Report. I will strike portions of the Report if they are in violation of the statutes or the case law. I will not consider those portions of the Pre–Sentence Investigation Report if, in fact, that is true. And that is what I'm going to do. So insofar as the Report might say there were prior uncharged acts, and the Report doesn't have a factual basis for that, then I'm not going to consider that aspect of the Pre–Sentence Investigation Report. But there are other portions of the Report that have merit for me to consider. And that includes the Defendant's com-

ments in the Pre–Sentence Investigation Report. And this includes the comments of the victim's families in the Pre–Sentence Investigation Report. The conclusion of the Probation Officer is merely the Probation Officer's recommendation. That's all it is. And the history, if you looked at the history of criminal cases in this Court you'd find occasions when I rejected the Probation Officer's recommendation, on occasions when I accepted the recommendation of the Probation Officer or where I accepted in part and rejected in part those kinds of recommendations. That's what I'm called upon to do and that's what I'll do. Tr. at 38–39.

time this Court or any Court should send any message to any community, and especially this community, that we are going [sic] to tolerate or consider leniency in situations where there is admission and evidence of child molestation. Number five, again, in terms of aggravators, I'm not going to consider that. That is the age of the victims. And number six is inapplicable, the mental or physical infirmity of the victims. But what is applicable is the emotional condition of the children and I'll get to that also. Number seven doesn't apply. Number eight and number nine, I'm not going to announce those. They don't apply in this particular case. Then I'm going to look at, in terms of this statute, the Court may consider the following factors as mitigating factors. And as I go through these mitigating factors, one, the crime neither caused nor threatened serious harm to person. It did, in the Court's opinion, impose serious harm to persons, those being the children. That's not, that threat mitigating factor is not applicable. Number two, the crime was a result of circumstances unlikely to recur. And considering the nature, and I'm not, incidently [sic], I'm stating for the record that I'm not going to consider those photographs or the testimony of Mr. Riley as to what happened twenty-five years ago. That's too remote in time. I'm going, that's a given. That is too remote in time. I'm not going to consider that fact. But I am going to consider the fact that I've got three separate victims in this particular case. And under the circumstances I believe there is a likelihood or the crime could recur given the fact, given the evidence as presented and given the attitude of the Defendant. I'm going to get to that as another aggravating circumstance. The victim certainly didn't facilitate this particular offense, being

children. So that doesn't apply. There's no substantial grounds tending to excuse or justify the crime. So that doesn't apply. Mr. Gutermuth is not acting under strong provocation. Number six, the person has no history of delinquency or criminal activity. That's somewhat applicable. Number seven, he's likely to respond affirmatively to probation or short-term imprisonment. That doesn't apply. Number eight, the character attitudes of Mr. Gutermuth indicate the person is unlikely to commit another crime. The reverse is true in this particular case. And number nine, restitution doesn't apply. Number ten, imprisonment of the person will result in undue hardship to the person. Of all those mitigating factors, perhaps two apply in this particular case. No prior criminal history as such. And that perhaps because of his age, but the age is only one particular factor. The other aggravating factors are the position of trust with the children. There was a definite position of trust with the children in here. And, if anything, we must develop positive attitudes in our children and positive trust in our children. And this is certainly one way of destroying that trust and destroying those positive attitudes in those children. And we know the history of these kinds of situations. Lord knows what these children are going to become as adults in view of what happened in this particular case. We certainly know with history what happens in other cases with other children who have been subject to abuse over the years under these kind of circumstances. I'm particularly finding as an aggravating circumstance a lack of remorse here. The attitude that Mr. Gutermuth had and the comments that he made to the Court's Probation Officer, which are represented in the Court's probation report, as well as

what I'll find on that polygraph examination, as the officer of the Court [i.e., the prosecutor] related to me, his attitudes towards children and the idea of molestation. Again, there are three different children in this particular factor. So given all of that I can't help but determine that the aggravating circumstances in this particular case outweigh the mitigating circumstances. And it is with regret that I impose a sentence on an individual as old as Mr. Gutermuth is. But I'm not going to let age interfere with offenses of these particular natures. Because it's not the age of the person that commits the offense that has any bearing on the devastating effect of the children. The age of the person can be anywhere from fifteen to a hundred and fifteen as far as the Courts are concerned. If there's child molesting involved, then those children are going to suffer. And that's the situation in this particular case. Having found all of that, and the Defendant having entered a plea of guilty to Count II, Child Molesting as a Class C Felony, and the Court having previously entered judgment of conviction for that particular offense, and having considered all of these particular factors and these factors are going to go to the aggravation of the sentences that I'm going to impose. And they're going to the consecutivity of the sentences that I'm going to impose. The Court for Count II will impose a presumptive term of four years and will add four additional years for aggravating circumstances, for a total of eight years. As to Count IV, the Defendant having been found guilty, having pled guilty to that offense and the Court having entered Judgment of Conviction for that offense, the Court will impose a sentence of four presumptive years plus four additional years, for eight total years. That second sentence is to be served consecutively to the sentence imposed under Count II. And the defendant having pled guilty to Child Molesting, as a Class C Felony under Count V, and the Court having entered Judgment of Conviction of that offense previously in this particular case, the Court will impose a four year sentence, presumptive sentence plus four additional years sentence. That sentence, that sentence, of that eight years, four years will be suspended with two years on home incarceration as a condition of probation upon being released on probation, on being released upon service of sentence with the remainder to be placed on strict terms of probation. But that sentence is also to be served consecutively in this particular case.

*Id.* at 129–36. The trial court did not inform Gutermuth of his right to appeal his sentence. *Cf. Collins v. State,* 817 N.E.2d 230, 231 (Ind.2004) ("[A] person who pleads guilty is entitled to contest on direct appeal the merits of a trial court's sentencing decision where the trial court has exercised sentencing discretion, i.e., where the sentence is not fixed by the plea agreement.").

On July 20, 2000, Gutermuth filed pro se a petition for post-conviction relief pursuant to Indiana Post–Conviction Rule 1, alleging that he had received ineffective assistance of counsel, that his guilty plea was not knowing, intelligent, and voluntary, and that there was no factual basis for the plea. Appellant's App. at 182–89. On December 5, 2002, Gutermuth filed by counsel an amended petition for post-conviction relief pursuant to Post–Conviction Rule 1, alleging that the trial court had improperly considered various aggravating and mitigating circumstances at sentencing and that his sentence was manifestly unreasonable pursuant to Indiana Appellate Rule 7(B). *Id.* at 197–200. On April 22, 2003,

the post-conviction court denied Gutermuth's amended petition.

Gutermuth appealed. Another panel of this Court addressed the merits of Gutermuth's sentencing claims and affirmed the denial of his petition for post-conviction relief, rejecting the State's argument that he had waived any challenge to his sentence because he "could have raised the issue in a direct appeal, but did not file one." *Gutermuth v. State*, 800 N.E.2d 592, 596 (Ind.Ct.App.2003), *trans. granted* (2004). Our supreme court granted the State's petition for transfer, thereby vacating this Court's opinion, and addressed the issue of "whether an individual who pleads guilty to an offense in an 'open plea' is entitled to challenge the sentence imposed by means of a petition for post-conviction relief." *Gutermuth v. State*, 817 N.E.2d 233, 234 (Ind.2004) (quoting *Collins*, 817 N.E.2d at 231). Based on its decision in *Collins*, the court held that "the post-conviction court should have dismissed the petition for post-conviction relief for lack of jurisdiction without prejudice to any right Gutermuth may have to file a belated notice of appeal in accordance with the requirements of [Post–Conviction Rule] 2." *Id.* at 234–35.[2] On November 17, 2004, the post-conviction court vacated its order and dismissed Gutermuth's petition.

On March 29, 2005, Gutermuth filed by counsel a petition for permission to file a belated notice of appeal pursuant to Post–Conviction Rule 2(1). On June 6, 2005, after a hearing, the trial court granted Gutermuth's petition. On July 6, 2005, Gutermuth filed a notice of appeal. On November 3, 2005, Gutermuth filed his appellant's brief, in which he argues that the trial court sentenced him in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), that the trial court abused its statutory sentencing discretion by considering improper aggravating circumstances and failing to give adequate weight to mitigating circumstances, and that his sentence is therefore inappropriate in light of the offenses and his character pursuant to Indiana Appellate Rule 7(B). We now turn our attention to Gutermuth's arguments.

### Discussion and Decision

#### I. Does Blakely Apply to Gutermuth's Appeal?

On June 24, 2004, the United States Supreme Court decided *Blakely*, in which it applied the Sixth Amendment rule expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000): " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely*, 542 U.S. at 301, 124 S.Ct. 2531 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). The *Blakely* majority explained that

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or*

---

**2.** In *Collins,* our supreme court explained,

> The fact that the trial court at a guilty plea hearing does not advise the defendant in an open plea situation that the defendant has the right to appeal the sentence to be imposed does not warrant an exception to the rule that sentencing claims must be raised on direct appeal. This is because Indiana Post–Conviction Rule 2 will generally be available to an individual in this situation. Post–Conviction

> Rule 2 permits an individual convicted after a trial or guilty plea who fails to file a timely notice of appeal to petition for permission to file a belated notice of appeal where the failure to file a timely notice of appeal is not the fault of the individual; and the individual is diligent in requesting permission to file a belated notice of appeal.

817 N.E.2d at 233 (footnote omitted).

*admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. *Id.* at 303, 124 S.Ct. 2531 (citations omitted).

In *Smylie v. State,* 823 N.E.2d 679 (Ind. 2005), *cert. denied,* the Indiana Supreme Court determined that "Indiana's sentencing system runs afoul of the Sixth Amendment not because it mandates a 'fixed term' [i.e., presumptive] sentence for each felony, but because it mandates *both* a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term." *Id.* at 685. The court also stated, however, that "[t]here is no constitutional problem with consecutive sentencing so long as the trial court does not exceed the combined statutory maximums." *Id.* at 686. The court then addressed the State's assertion that Smylie had forfeited his right to challenge his sentence under *Blakely* by failing to object on Sixth Amendment grounds at sentencing:

> It is firmly established that, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending *on direct review or not yet final,* with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). A rule is new for the purposes of retroactivity "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Blakely* was decided while Smylie's case was still pending on direct appeal, and thus, the initial question is whether the result in

*Blakely* was dictated by existing precedent.

> The State apparently concedes that *Blakely* constitutes a new rule for the purposes of retroactivity. Correctly so. While *Blakely* certainly states that it is merely an application of "the rule we expressed in *Apprendi v. New Jersey,'* 542 U.S. at [301], 124 S.Ct. 2531 it is clear that *Blakely* went beyond *Apprendi* by defining the term "statutory maximum." As the Seventh Circuit recently said, it "alters courts' understanding of 'statutory maximum'" and therefore runs contrary to the decisions of "every federal court of appeals [that had previously] held that *Apprendi* did not apply to guideline calculations made within the statutory maximum." *Simpson v. United States,* 376 F.3d 679, 681 (7th Cir. 2004) (collecting cases). Because *Blakely* radically reshaped our understanding of a critical element of criminal procedure, and ran contrary to established precedent, we conclude that it represents a new rule of criminal procedure.

> . . . .

> Of course, as the State points out, the application of *Blakely* to any case pending on direct review remains subject to the standard rules governing appellate procedure such as waiver and forfeiture.

> To receive the benefit of a new rule of law, a claimant must preserve the issue for appeal. In *Pirnat v. State,* 607 N.E.2d 973 (Ind.1993), for example, we considered the retroactive applicability of our decision about the admissibility of "depraved sexual instinct" evidence to cases pending on appeal at the time *Lannan v. State,* 600 N.E.2d 1334 (Ind. 1992) was decided. We declared that "Pirnat and others *whose cases properly preserved the issue* and whose cases were pending on direct appeal at the time *Lannan* was decided receive the

benefit of review under the new rule." *Pirnat*, 607 N.E.2d at 974 (emphasis added). Pirnat had previously challenged the admission of the "depraved sexual instinct" evidence at trial and on appeal. *Pirnat v. State*, 596 N.E.2d 259 (Ind.Ct.App.1992).

We reached the same conclusion in *Coleman v. State*, 558 N.E.2d 1059 (Ind. 1990), when we considered the retroactive applicability of the constitutional rule announced in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) to cases pending on direct appeal at the time those rules were announced. Although we concluded that *Booth* and *Gathers* applied retroactively to cases pending on direct appeal, we made clear that we considered the rule to "apply to the direct appeal of a trial occurring before those cases were decided *so long as the appellant has preserved [the issue for appeal] by objecting at trial.*" *Coleman*, 558 N.E.2d at 1061 (emphasis added). We have utilized this same approach in other cases. *See, e.g., Ried v. State*, 615 N.E.2d 893 (Ind.1993); *Daniels v. State*, 561 N.E.2d 487 (Ind.1990).

On this principle of appellate law, Indiana jurisprudence is rather ordinary. In *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), for example, the Supreme Court applied the plain error test to a case pending on appeal when the new rule in *Apprendi* was announced. In so doing, the Court noted that Cotton's claim was "forfeited" because of his failure to object to alleged error at trial. *Id.* at 629, 122 S.Ct. 1781. Similarly, in *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Court considered the retroactive application of the rule announced in *Unit-

ed States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), to a case pending on appeal at the time of that decision. In considering Johnson's claim, the Court noted that "[b]ecause petitioner is still on direct review, Griffith requires that we apply *Gaudin* retroactively." *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544. The Court, however, still applied plain error review because of Johnson's failure to object at trial and preserve the error for appeal. *Id.* Unsurprisingly, a number of federal circuit cases reflect the same practice.

Given this backdrop of precedent we believe that our approach regulating the retroactive application of a new rule to cases pending on direct appeal through the application of the rules governing appellate procedure is entirely consistent with the dictates of *Griffith*. As such, we agree with the State that it is entirely possible for defendants to have waived or forfeited their ability to appeal their sentence on *Blakely* grounds. *Id.* at 687–88 (initial emphasis and brackets added) (footnotes and parallel citations omitted).

The court then examined the issue of preserving a Blakely challenge and summarized its analysis as follows:

First, as a new rule of constitutional procedure, we will apply *Blakely* retroactively to all cases on direct review at the time *Blakely* was announced. Second, a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a *Blakely* claim before its issuance would fall within the range of effective lawyering. Third, those defendants who did not appeal their sentence at all will have forfeited any *Blakely* claim.

*Id.* at 690–91.

In this case, Gutermuth asserts, and the State does not specifically deny, that

*Blakely* applies retroactively to his appeal. As stated previously, Gutermuth filed his belated notice of appeal pursuant to Post–Conviction Rule 2(1), which provides,

> Where an eligible defendant convicted after a trial or plea of guilty fails to file a timely notice of appeal, a petition for permission to file a belated notice of appeal for appeal of the conviction may be filed with the trial court, where:
>
> (a) the failure to file a timely notice of appeal was not due to the fault of the defendant; and
>
> (b) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.
>
> The trial court shall consider the above factors in ruling on the petition. Any hearing on the granting of a petition for permission to file a belated notice of appeal shall be conducted according to Section 5, Rule P.C. 1.
>
> If the trial court finds grounds, it shall permit the defendant to file the belated notice of appeal, which notice of appeal shall be treated for all purposes as if filed within the prescribed period.
>
> If the trial court finds no grounds for permitting the filing of a belated notice of appeal, the defendant may appeal such denial by filing a notice of appeal within thirty (30) days of said denial.

(Emphases added.)[3]

In support of his argument regarding *Blakely's* applicability, Gutermuth states,

> The Indiana sentencing scheme that ran afoul of *Blakely* was used when Gutermuth was sentenced and although belated this appeal is now on direct review. The delay was not attributable in any manner to Gutermuth as he had been advised that he did not have a right to appeal. Furthermore, Gutermuth had

previously made diligent efforts to challenge his sentence through the aforementioned post-conviction relief proceedings.

Appellant's Br. at 9. We agree with Gutermuth that *Blakely* applies retroactively to his case, but not because it is currently on direct review. As mentioned earlier, our supreme court stated that it would "apply *Blakely* retroactively to all cases on direct review *at the time Blakely was announced.*" *Smylie*, 823 N.E.2d at 690–91 (emphasis added). Blakely had been on the books for over a year by the time Gutermuth filed his notice of appeal.

Instead, we conclude that *Blakely* applies retroactively because Gutermuth's case was not yet final when *Blakely* was decided. In *Griffith*, the U.S. Supreme Court explained that "final" means "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition of certiorari elapsed or a petition for certiorari finally denied." 479 U.S. at 321 n. 6, 107 S.Ct. 708. In Gutermuth's case, the availability of appeal via Post–Conviction Rule 2(1) had not yet been exhausted when *Blakely* was announced, and therefore *Blakely* must be given retroactive effect. *See Sullivan v. State*, 836 N.E.2d 1031, 1035 (Ind.Ct.App.2005) ("Because Sullivan was given permission to file this belated appeal, he may rely on *Blakely* even though he was sentenced more than five years before it was decided because his case was 'not yet final' when *Blakely* was decided."); *see also Fosha v. State*, 747 N.E.2d 549, 552 (Ind.2001) (applying new double jeopardy rule where defendant filed belated praecipe several months before rule was announced in *Richardson v. State*, 717 N.E.2d 32 (1999); "[O]ur rule

---

**3.** The State does not argue that the trial court abused its discretion in granting Gutermuth's

petition for permission to file a belated notice of appeal.

that precludes retroactive application of new criminal rules to collateral proceedings does not apply to direct appeals brought pursuant to Post–Conviction Rule 2.").[4]

We acknowledge that at least two different panels of this Court have reached a different conclusion. In *Robbins v. State,* 839 N.E.2d 1196 (Ind.Ct.App.2005), *trans. not sought,* the defendant pleaded guilty to two counts of class B felony child molesting and was sentenced to consecutive maximum twenty-year terms in 1999. Robbins filed an amended petition for post-conviction relief in 2001, which he withdrew in 2005 after our supreme court decided *Collins.* Robbins filed a belated notice of appeal in March 2005 and challenged his sentence under *Blakely.* In addressing the *Blakely* claim, the *Robbins* court discussed the ramifications of *Smylie* and noted that the defendant's "direct appeal was not pending at the time that *Blakely* was decided." *Id.* at 1199. The court then stated,

As to whether Robbins's case was "final" when *Blakely* was decided, we note that a timely notice of appeal is filed within thirty days after the entry of a final judgment. Ind. Appellate Rule 9(A)(1). While Robbins still had the option of pursuing a belated appeal at the time that the *Blakely* rule was announced, it is our conclusion that because his right to pursue a timely appeal had lapsed over four years prior to *Blakely,* his case was final for the purpose of retroactivity. Accordingly, we conclude that Robbins is not entitled to raise a *Blakely* challenge because *Blake-*

*ly* does not apply retroactively to Robbins's case.

*Id.*

In *Hull v. State,* 839 N.E.2d 1250 (Ind. Ct.App.2005), *trans. not sought,* the defendant was resentenced for two counts of murder fifty days before *Blakely* was decided. Ten months after *Blakely,* Hull belatedly appealed his sentence on several grounds. On cross-appeal, the State argued that the trial court abused its discretion in granting Hull's motion to file a belated notice of appeal. The court disagreed, noting that

Hull alleged in his motion that the trial court did not advise him of his appellate rights at the resentencing hearing and that he was diligent in pursuing his right to appeal the new sentence. The State does not dispute that Hull was not advised of his appellate rights at resentencing.... [W]e are unaware of any additional information that Hull could have provided in support of his motion.

*Id.* at 1254.

With respect to Hull's *Blakely* claim, however, the court stated,

Hull did not file a timely notice of appeal and thus, Hull's direct appeal was not pending at the time *Blakely* was decided. It was nearly ten months after *Blakely* that Hull filed his motion to file a belated notice of appeal. In short, although it was later revived, Hull's case was not on direct review when *Blakely* was decided. *See Robbins v. State,* [839 N.E.2d at 1199,] (holding that *Blakely* did not apply to a case that was final but not on direct review when *Blakely* was

---

**4.** The *Fosha* court rejected the State's contention that "the defendant's convictions and sentence became final when the defendant did not perfect a timely direct appeal by February 3, 1994, thirty days after the defendant's motion to correct errors was deemed denied pursuant to Indiana Trial Rule 53.3(A).").

747 N.E.2d at 552 n. 5. The court noted that "[w]here a trial court grants a defendant's motion to file a belated praecipe, it 'shall be treated for all purposes as if filed within the prescribed period.' Ind. Post–Conviction Rule 2(1)." *Id.* at 552 (footnote omitted).

decided and in which the trial court later allowed a belated appeal). Accordingly, Hull's claims under *Blakely* must fail. *Hull*, 839 N.E.2d at 1256.

We must respectfully disagree with our colleagues' interpretation of finality as it relates to the retroactive application of *Blakely*. The U.S. Supreme Court's definition of finality in *Griffith* requires only that the availability of appeal be exhausted; it does not require that the appeal be timely filed. *See* 479 U.S. at 321 n. 6, 107 S.Ct. 708. Although not based directly on *Griffith*, we have found one Indiana case that illustrates this critical point.

In *Horrall v. State*, 673 N.E.2d 526 (Ind. Ct.App.1996), police seized 217 marijuana plants from the defendant's property in 1993. Horrall was assessed a controlled substance excise tax ("CSET") of $12,000. He was subsequently convicted of possession of marijuana and received a thirty-month sentence. "Horrall timely filed a praecipe, but his appeal did not proceed because the appellate counsel who had been appointed failed to file the record of proceedings with this court." *Id.* at 527. In December 1995, our supreme court held that "[p]rosecution for possession of marijuana after the assessment of CSET is barred by principles of double jeopardy." *Id.* (citing *Bryant v. State*, 660 N.E.2d 290, 300 (Ind.1995), *cert. denied* (1996)). After Horrall was released from prison in 1996, he pursued a belated appeal of his conviction based on our supreme court's holding in *Bryant*.

We addressed Horrall's claim as follows:

Prosecution for possession of marijuana after the assessment of CSET is barred by principles of double jeopardy. *Bryant*, 660 N.E.2d at 300. Generally, a newly declared constitutional rule regarding the conduct of criminal prosecutions is applied to all cases pending on direct review. *Davis v. State*, 598 N.E.2d 1041, 1051 (Ind.1992).[5] However, a new constitutional rule of criminal procedure is generally not applicable to those cases on collateral review, that is, those which have become final before the new rule was announced. *Daniels v. State*, 561 N.E.2d 487, 488–89 (Ind. 1990).[6]

---

**5.** *See Davis*, 598 N.E.2d at 1051 ("The defendant also contends that the prosecutor's final argument was improper because it touched on the value of the victim's life to family and loved ones, contrary to *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440. However, *Booth* and its rationale were expressly overruled and rejected in *Payne v. Tennessee* (1991), 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720. As a newly declared constitutional rule regarding the conduct of criminal prosecutions, *Payne* should be retroactively applied to all cases pending on direct review. *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649; *cf. Daniels v. State* (1990), Ind., 561 N.E.2d 487 (retroactivity in cases pending on collateral review).") (some citations omitted).

**6.** *See Daniels*, 561 N.E.2d at 488–89 ("However, a direct appeal terminates and a conviction becomes final when the availability of appeal, including a petition for certiorari, is exhausted or expires. *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649. Daniels' conviction became final with the failure to seek Supreme Court review of our decision on direct appeal. The present cause, resulting from Daniels' separate appeal following the denial of his petition for post-conviction relief, is a collateral review proceeding initiated after his case became final with the conclusion of his direct appeal. Upon analysis of the issue of retroactivity, the Supreme Court recently held that a new constitutional rule of criminal procedure is generally not applicable to those cases on collateral review, that is, those which have become final before the new rule was announced. *Teague v. Lane* (1989), 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334.") (some citations omitted).

The State argues that Horrall may not benefit from a "retroactive" application of *Bryant* in this belated appeal. The State argues that the procedure for bringing a belated appeal under [Post–Conviction Rule] 2 "essentially allows collateral attacks on a conviction, although under the guise of a direct appeal." We disagree.

As discussed by Professor Stroud:

Post–Conviction Remedy Rule 2 ... is not a post-conviction relief procedure in the truest sense. [Post–Conviction Rule] 2, unlike [Post–Conviction Rule] 1, *does not create a procedure for collaterally challenging a conviction or sentence.*

[Post–Conviction Rule] 2 does, however, provide a means by which a procedurally derailed appeal can be set back on the track towards review on the merits. *The function, then, of [Post–Conviction Rule] 2 is to facilitate the direct appellate review of convictions.*

Stroud, Kenneth M., 4A *Indiana Practice* (2nd Ed.1990) § 18.1 p. 253 (Emphasis added). Moreover, our supreme court has held that the Equal Protection Clause of the United States Constitution prevents a state from imposing a more rigorous standard on an appellant seeking a belated appeal under [Post–Conviction Rule] 2 than on those seeking a timely appeal. *Gallagher v. State*, 274 Ind. 235, 410 N.E.2d 1290, 1292 (1980).[7]

The present appeal, although belated, is a direct appeal. Therefore, Horrall is entitled to an application of *Bryant*, 660 N.E.2d 290, and we must vacate his criminal conviction under principles of double jeopardy. *See id.* at 300.

*Id.* (alterations added) (citation to brief omitted).

---

7. In *Gallagher*, the defendant was convicted of second-degree murder in 1968, and there was "no record that [he] was advised about his right to appeal or the procedures necessary to perfect an appeal or to secure legal counsel for that purpose." 274 Ind. at 237, 410 N.E.2d at 1291. Gallagher did not learn of his appellate rights until 1976, and in December 1977 he petitioned our supreme court for a belated appeal. Having received no ruling on the petition, in November 1978 Gallagher filed a petition for post-conviction relief, which was denied in June 1979. Gallagher appealed that denial, and our supreme court consolidated that cause with the undecided belated appeal. Our supreme court found that Gallagher was diligent in perfecting his belated appeal and then considered the merits of his petition for post-conviction relief, in which he sought a new trial or discharge based on the unavailability of a trial transcript for purposes of appeal. The court stated,

It has been established that a new trial is an appropriate remedy where there is no usable transcript available for appeal. The basis for this is that absent evidence of an intelligent waiver of the right to appeal or an appraisal by counsel that the appeal would be wholly frivolous, the state is constitutionally required to protect petitioner's right to appeal. Furthermore, once sufficient excuse for any delay is advanced, the Equal Protection Clause of the United States Constitution prevents a state from imposing a more rigorous standard on petitioners seeking a belated appeal than on those seeking a timely appeal. The underlying merits of an appeal have no bearing on the question of restoring fundamental appellate rights where they have been wrongfully denied.

Indiana statutory law has made an appeal from a state conviction in a criminal case a matter of right. Therefore, the scheme of appellate review must conform to constitutional requirements of equal protection and due process. The record in the instant case does not show a voluntary, knowing, and intelligent waiver by petitioner of his right to appeal, but does show evidence of the desire to appeal and lack of advisement about the procedures necessary to perfect the appeal. *Id.* at 239, 410 N.E.2d at 1292–93 (citations omitted). Our supreme court found that Gallagher "was denied his statutory and constitutional right to adequate appellate review" and reversed and remanded for a new trial. *Id.* at 240, 410 N.E.2d at 1293.

Likewise here, Gutermuth's belated appeal is a direct appeal, and absent any indication that he is responsible for the tardiness of his appeal, he is entitled to the retroactive application of *Blakely.* *See id.*[8] At this point, it bears mentioning that those familiar with Indiana's criminal justice system are aware that there are likely hundreds, if not thousands, of criminal defendants in a situation similar to Gutermuth's: namely, those who pled guilty and were sentenced prior to both *Collins* and *Blakely* and were not advised of their right to challenge their sentence in a direct appeal. Pursuant to *Smylie* and *Griffith,* many of those defendants are now entitled to retroactive application of *Blakely,* and many of them have pursued (or will pursue) a belated appeal and challenge their enhanced sentences "on the basis of a rule that was not the law when they were convicted [and] could not have been anticipated when they were sentenced[.]" *Powell v. State,* 574 N.E.2d 331, 334 (Ind.Ct.App. 1991), *trans. denied* (1992).[9] To put it mildly, the retroactive application of *Blakely* is likely to "have a highly detrimental effect on the administration of jus-

tice." [10] *Id.* Unless and until the U.S. Supreme Court revises or clarifies its rules on retroactivity, however, we are bound to consider the merits of belated *Blakely* appeals where appropriate.

We now address the merits of Gutermuth's *Blakely* claim, as well as other sentencing considerations where appropriate. The trial court enhanced the four-year statutory presumptive sentence on each of the three counts of class C felony child molesting based on the following aggravating circumstances: (1) Gutermuth is in need of correctional rehabilitative treatment best provided by commitment to a penal facility; (2) imposition of a reduced or suspended sentence would depreciate the seriousness of the crimes; (3) Gutermuth molested three separate victims; (4) Gutermuth was likely to reoffend; (5) Gutermuth was in a position of trust with his victims; and (6) Gutermuth lacked remorse for his crimes. *See* Tr. at 129–36. In *Trusley v. State,* 829 N.E.2d 923 (Ind. 2005), our supreme court explained that

> [u]nder *Blakely,* a trial court in a determinate sentencing system such as

**8.** *Cf. Kling v. State,* 837 N.E.2d 502, 508–09 (Ind.2005) ("We also decline Kling's invitation to decide, in a one-size-fits-all manner, whether any person who elects to continue litigating a P–C.R. 1 petition—with potential claims presentable only in a direct appeal waiting in the wings—will later be able to demonstrate diligence as part of a possible P–C.R. 2 proceeding. The factual determination of diligence is one for the trial court or appropriate appellate court to make in the context of a particular case when P–C.R. 2 relief is sought. However, as a general matter, electing to proceed first on a P–C.R. 1 claim does not preclude a finding of diligence in a later P–C.R. 2 claim. Nor does the time spent by the State Public Defender investigating a claim count against the defendant when courts consider the issue of diligence under P–C.R. 2. Finally, with respect to P–C.R. 2 petitions filed by persons sentenced in 'open pleas,' we think it appropriate for courts to keep in mind that *Collins* resolved a conflict

in earlier Court of Appeals' opinions regarding whether such a defendant could include a sentencing challenge in a P–C.R. 1 petition, *see* 817 N.E.2d at 231, and some delay may be attributable to the prior uncertainty in the law rather than the defendant's lack of diligence.").

**9.** *Powell* addressed retroactivity in a post-conviction context.

**10.** In her dissenting opinion in *Blakely,* Justice O'Connor lamented that the majority had "ignore[d] the havoc that it [was] about to wreak on trial courts across the country." 542 U.S. at 324, 124 S.Ct. 2531 (O'Connor, J., dissenting). The same might be said for the country's appellate courts, which are now sorting through a myriad of complex questions left unanswered in the wake of the *Blakely* majority's headlong pursuit of "doctrinaire formalism." *Id.* at 321, 124 S.Ct. 2531 (O'Connor, J., dissenting).

Indiana's may enhance a sentence based only on those facts that are established in one of several ways: 1) as a fact of prior conviction; 2) by a jury beyond a reasonable doubt; 3) when admitted by a defendant; and 4) in the course of a guilty plea where the defendant has waived *Apprendi* rights and stipulated to certain facts or consented to judicial factfinding.

*Id.* at 925.

Gutermuth states, "As could be expected since the sentencing was in 1997, an appropriate waiver was not procured." Appellant's Br. at 10. This statement highlights one of the absurdities inherent in the retroactive application of *Blakely*, as well as the magnitude of the sea change that *Blakely* wrought in criminal procedure. That said, Gutermuth does not assert that the probable cause affidavit and the two exhibits related to his polygraph examination, which the State used without objection to establish a factual basis for his crimes, run afoul of *Blakely* for sentencing purposes. Neither does Gutermuth challenge the presentence investigation report on *Blakely* grounds.

■ Gutermuth acknowledges that in pleading guilty to the facts alleged in the charging information, he admitted to molesting three separate victims. He challenges the propriety of the remaining aggravators, which we address in turn. As for the trial court's finding that he is in need of correctional rehabilitative treatment best provided by commitment to a penal facility, Gutermuth argues that "[s]uch a generalized statement would certainly [offend] *Blakely* since the origin of the facts upon which this aggravator is based are unknown. *Blakely* concerns aside, this aggravator is properly used to

enhance a sentence only when the court explains with specific facts why treatment is needed beyond that provided by the presumptive sentence." Appellant's Br. at 13.[11] We find Gutermuth's non-*Blakely* argument dispositive and conclude that this aggravating circumstance is improper given the lack of such an explanation in this case. *See Hope v. State,* 834 N.E.2d 713, 719 (Ind.Ct.App.2005) ("This factor may be used to enhance a sentence above the presumptive only if the trial court provides a specific or individualized reason as to why the defendant requires correctional treatment in excess of the presumptive term."); *see also Sheron v. State,* 682 N.E.2d 552, 553 (Ind.Ct.App.1997) ("As a matter of jurisprudence, courts will not decide constitutional issues when a case can be decided on other grounds.").

■ With respect to the trial court's finding that the imposition of a reduced or suspended sentence would depreciate the seriousness of the crimes, Gutermuth acknowledges that "[b]ecause this aggravator cannot justify a sentence above the 'statutory maximum,' i.e., the presumptive sentence, its use does not implicate *Blakely* concerns." *McGinity v. State,* 824 N.E.2d 784, 787 (Ind.Ct.App.2005), *trans. denied.* Nevertheless, Gutermuth argues—and the State concedes—that this aggravator is improper because there is no indication that the trial court was considering imposing anything less than the presumptive sentence. *See Bacher v. State,* 686 N.E.2d 791, 801 (Ind.1997) ("This aggravating factor is used to support a refusal to reduce the presumptive sentence. There is nothing in the record indicating that the trial court was considering a re-

---

**11.** To support this assertion, Gutermuth cites this Court's opinion in *Farrell v. State,* 612 N.E.2d 124 (Ind.Ct.App.1993), which was va-

cated upon our supreme court's grant of transfer. *See Farrell v. State,* 622 N.E.2d 488 (Ind.1993).

duced sentence. Therefore, the use of this aggravating circumstance was improper.").

■ As for the trial court's determination that he was likely to reoffend, Gutermuth cites *Altes v. State*, 822 N.E.2d 1116 (Ind.Ct.App.2005), *trans. denied*, in which we stated that "a trial court's assessment of a defendant's future criminal behavior can properly be based upon the defendant's adult or juvenile criminal history." *Id.* at 1125. We noted, however, that Altes was appealing his first conviction, and therefore "the trial court's speculation regarding his possible lack of future law abiding behavior cannot be derived from his past criminal conduct and thus, is an aggravator which should have been found by the jury." *Id.* Gutermuth points out that he has no prior convictions and asserts that this aggravator is therefore improper.

The State argues that *Altes* is inapplicable because Gutermuth admitted to molesting three victims. The State also argues that other facts admitted by Gutermuth support this aggravator. In *Morgan v. State*, 829 N.E.2d 12 (Ind. 2005), our supreme court explained,

> We do not see how the Sixth Amendment is implicated or endangered by permitting judges to use aggravators to enhance sentences so long as the underlying facts supporting the aggravator are found by a jury or admitted by a defendant.
>
> Put another way, Sixth Amendment rights are not implicated when the language of an aggravator is meant to describe the factual circumstances, not to serve as a fact itself. This is certainly the case with an aggravator such as "failed to rehabilitate" or "failed to deter" where the language used itself is not a fact. Such observations merely describe the moral or penal weight of actual facts. The "fact" of being unde-

terred is not established by a statement to that effect, but rather by the underlying fact of prior convictions . . . .

> The aggravators in such instances are not found by the separate inquiry of a judge, but rather by reference to facts already admitted by the defendant or found by a jury. Thus the use of such underlying facts to support an aggravator does not require the independent judicial fact-finding at issue in *Blakely*. Rather, it reflects the efforts of a judge to describe in a concise manner what the underlying facts mean, and why they demonstrate that a particular defendant deserves an enhanced sentence.

> Because the use of underlying facts to support an enhanced sentence does not violate the Sixth Amendment requirements of *Blakely* by allowing impermissible independent judicial fact finding, we hold that sentences enhanced by aggravators whose language is not specifically found by a jury or admitted by the defendant, are not necessarily impermissible so long as the aggravator in question was 1) supported by facts otherwise admitted or found by a jury and 2) meant as a concise description of what the underlying facts demonstrate and therefore relies upon a legal determination otherwise reserved as a power of the judge.

*Id.* at 17–18.

Here, the probable cause affidavit indicates that Gutermuth molested three children and warned them not to tell anyone. Appellant's App. at 14–15. Gutermuth later confessed and stated that he had molested the children to gain their trust and discover who else might have been molesting them. *Id.* at 18. When he was interviewed for the presentence investigation report, however, Gutermuth told the probation officer that "[t]he whole thing is a

bunch of lies." Appellant's App. at 133.[12] In light of Gutermuth's molestation of multiple victims, his perverse rationale for doing so, his attempt to conceal his crimes by admonishing the victims to remain silent, and his subsequent denial of responsibility, we believe that the trial court properly concluded, based on Gutermuth's admissions, that he was likely to reoffend if not incarcerated for a significant period of time. This conclusion does not violate the Sixth Amendment requirements of *Blakely*.[13] *See Morgan*, 829 N.E.2d at 17–18.

■ We also believe that the trial court did not violate *Blakely* in concluding that Gutermuth was in a position of trust with his victims. According to the probable cause affidavit, the victims had been living in Gutermuth's home for several months when they were molested, and two of the three victims referred to him as "Grandpa." Appellant's App. at 14–15. These admitted facts are sufficient to support a conclusion that Gutermuth was in a position of trust with the victims.

■ Finally, we address the trial court's determination that Gutermuth lacked remorse for his crimes. The trial court stated,

I'm particularly finding as an aggravating circumstance a lack of remorse here. The attitude that Mr. Gutermuth had and the comments that he made to the Court's Probation Officer, which are represented in the Court's probation report, as well as what I'll find on that polygraph examination, as the officer of the Court [i.e., the prosecutor] related to

me, his attitudes towards children and the idea of molestation.

Tr. at 133–34. When interviewed for the report, Gutermuth told the probation officer,

The whole thing is a bunch of lies. I told my attorney that I want to go to trial. I did not know what I signed. I didn't have the faintest idea. I told [my attorney] that. I realize that I pled guilty to it the way it stands but I didn't do it and why should I plead guilty to something I didn't do. I want to go to trial if that's what it takes. I am not going to plead guilty to all three of those kids. I can't hear very good and don't get all the words and just went on with what I thought it was. After I read the thing it said I molested all three of them and two of them weren't even there, and I did not molest the other one anyway. I shouldn't have to plead to something I didn't do.

Appellant's App. at 133–34. Gutermuth claims that the statement merely "reflect[s] a general disagreement between [him] and counsel. The statement does not equate to a finding of a lack of remorse as much as it reflects dissatisfaction with the pleas entered and counsel's apparent advice to avoid trial." Appellant's Br. at 11 (citation to appendix omitted). Notwithstanding Gutermuth's self-serving interpretation of his statement, we believe that the trial court could properly conclude that his comments demonstrate a lack of remorse for the crimes to which he had previously confessed and pled guilty. Having found a proper factual basis for the

---

12. We note that Gutermuth did not testify, let alone protest his innocence, at the sentencing hearing.

13. In its brief, the State mentions the testimony of the victims' father, Earl Riley, that "Gutermuth molested him when he was eleven years old and took nude photographs of him as a child approximately twenty-five years ago." Appellee's Br. at 10. At sentencing, the trial court specifically stated that it was "not going to consider those photographs or the testimony of Mr. Riley as to what happened twenty-five years ago. That's too remote in time." Tr. at 132.

trial court's conclusion, we need not address Gutermuth's arguments regarding the polygraph examination.[14]

In sum, we conclude that four of the six aggravating circumstances found by the trial court do not violate *Blakely* and that two of the aggravators are improper on other grounds. Having found no Sixth Amendment violation, we need not address Gutermuth's constitutional harmless error argument and instead consider the propriety of his sentence under our traditional standard of review.

## II. Propriety of Sentence

Gutermuth argues that the trial court improperly identified and weighed aggravators and mitigators and that his twenty-four-year aggregate sentence is therefore inappropriate pursuant to Appellate Rule 7(B). In *Hope*, 834 N.E.2d 713, we stated,

> In the past, whether a trial court abused its discretion in issuing a sentencing statement identifying and weighing aggravators and mitigators usually has been a separate analysis from whether the resulting sentence was inappropriate (or manifestly unreasonable) under Indiana Appellate Rule 7(B).[15] *See Noojin v. State*, 730 N.E.2d 672, 678 (Ind.2000). Now, when faced with a non-*Blakely* challenge to an enhanced sentence, it appears the first step is to determine whether the trial court issued

a sentencing statement that (1) identified all significant mitigating and aggravating circumstances; (2) stated the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulated the court's evaluation and balancing of the circumstances. *See Cotto v. State*, 829 N.E.2d 520, 523–24 (Ind.2005). If we find an irregularity in a trial court's sentencing decision, "we have the option to remand to the trial court for a clarification or new sentencing determination, to affirm the sentence if the error is harmless, or to reweigh the proper aggravating and mitigating circumstances independently at the appellate level." *Id.* at 525. Even if there is no irregularity and the trial court followed the proper procedures in imposing sentence, we still may exercise our authority under Appellate Rule 7(B) to revise a sentence that we conclude is inappropriate in light of the nature of the offense and the character of the offender. *See Ruiz v. State*, 818 N.E.2d 927, 928 (Ind.2004).

*Id.* at 717–18.

■ Gutermuth raises no additional substantive arguments regarding the propriety of the four valid aggravating circumstances found by the trial court and instead challenges only their respective

---

14. We note that the videotape of the polygraph examination does not appear in the record before us. Consequently, we are unable to verify either party's arguments regarding the contents of the videotape.

15. When Gutermuth was sentenced in 1997, Appellate Rule 17(B) read as follows: "The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." Effective January 1, 2001, the rule was redesignated as Appellate Rule 7(B). Effective January 1, 2003, Appellate Rule 7(B)

was amended to read, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We review Gutermuth's sentence under the current standard. *See Polk v. State*, 783 N.E.2d 1253, 1260 (Ind. Ct.App.2003) ("Because the rule is directed to the reviewing court, the amendment is applicable to review after January 1, 2003, even though the sentence was imposed prior to that date."), *trans. denied.*

weight, which we address below.[16] To the extent Gutermuth contends that the trial court erred in failing to assign a specific weight to each aggravator and mitigator, we note that the court was not required to do so. *Leffingwell v. State*, 810 N.E.2d 369, 371 (Ind.Ct.App.2004).

With respect to mitigators, we observe that

> [t]he finding of mitigating circumstances is not mandatory and rests within the trial court's discretion. The trial court has the discretion to determine the existence of and the weight given to a mitigating circumstance. The trial court is not required to accord the same weight to a mitigating circumstance as would the defendant. Additionally, the trial court need not consider a mitigating circumstance that is highly disputable in nature, weight, or significance. When the trial court fails to find a significant mitigating circumstance that is clearly supported by the record, however, there is a reasonable belief that it was improperly overlooked.

*Moyer v. State*, 796 N.E.2d 309, 313 (Ind. Ct.App.2003) (citations omitted).

Gutermuth first contends that the trial court abused its discretion in failing to consider his advanced age as a significant mitigating factor. We disagree. "Age is neither a statutory nor a per se mitigating factor." *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind.1999). There is no evidence that the eighty-three-year-old Gutermuth was suffering from any significant age-related infirmities other than

hearing impairment when he was sentenced in 1997. *Cf. Dockery v. State*, 504 N.E.2d 291, 297 (Ind.Ct.App.1987) (stating that trial court's failure to note seventy-six-year-old defendant's age, poor health, lack of criminal record, and productive work history "impede[d] meaningful appellate review of the sentence imposed"). Given the nature of the crimes committed, we cannot say that the trial court abused its discretion in discounting Gutermuth's age as a significant mitigating factor.

Gutermuth also contends that the trial court abused its discretion in not considering his guilty plea as a mitigating circumstance. Again, we disagree. The significance of a guilty plea as a mitigating factor will vary from case to case. *Francis v. State*, 817 N.E.2d 235, 238 n. 3 (Ind.2004). Gutermuth pled guilty on the day of trial, with a jury panel waiting in the wings, and he benefited substantially from the dismissal of two class B felony and twenty-one class A misdemeanor charges. Gutermuth's last-minute plea appears to have been largely pragmatic, and thus it was entitled to minimal mitigating weight. *See Wells v. State*, 836 N.E.2d 475, 479 (Ind.Ct.App.2005) ("[A] guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one."), *trans. denied* (2006).

Having determined that two of the trial court's six aggravators are improper,

---

**16.** We do agree with Gutermuth that the trial court acted improperly in sending a "message" to the community that it was not "going to tolerate or consider leniency in situations where there is admission and evidence of child molestation." Tr. at 131. Our supreme court has stated, "We do not believe ... that a trial judge should be allowed to use the sentencing process as a method of sending a personal philosophical or political message. A trial judge's desire to send a message is not a proper reason to aggravate a sentence." *Beno v. State*, 581 N.E.2d 922, 924 (Ind.1991). Because the trial court did not specifically cite this "message" as a basis for imposing enhanced and consecutive sentences, however, we do not address it further.

and having found no impropriety in the court's consideration of mitigators, we elect to reweigh the aggravators and mitigators independently pursuant to Appellate Rule 7(B).[17] *See Hope*, 834 N.E.2d at 718. Gutermuth molested three children with whom he was in a position of trust; we conclude that these aggravating circumstances are entitled to substantial weight. The trial court placed particular emphasis on Gutermuth's lack of remorse for his crimes, and we, too, find this deserving of significant aggravating weight. The likelihood of Gutermuth reoffending is intrinsically more speculative and in this case merits less aggravating weight. The record indicates that the trial court did not place much significance on the two improper aggravators mentioned above. Gutermuth's lack of criminal history is entitled to some mitigating weight, but we cannot say that it outweighs the four proper aggravators found by the trial court.

Appellate Rule 7(B) provides that this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our supreme court has explained that "[t]his formulation places central focus on the role of the trial judge, while reserving for the appellate court the chance to review the matter in a climate more distant from local clamor." *Serino v. State*, 798 N.E.2d 852, 856–57 (Ind.2003). The court has also stated that when a perpetrator commits the same offense against multiple victims, "enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Id.* at 857. In light of the foregoing considerations, as well as the nature of the three molestations and Gutermuth's character, we conclude that his twenty-four-year aggregate sentence is appropriate.[18]

Affirmed.

FRIEDLANDER, J., dissents with opinion.

MAY, J., concurs with opinion.

FRIEDLANDER, Judge, dissenting.

The threshold issue in this case is whether *Blakely* applies to Gutermuth's appeal. I respectfully dissent from the majority's conclusion that it does.

As ably described in the majority opinion, the important events in the chronology of Gutermuth's case for purposes of determining the timeliness of his appeal are (1) he was convicted and sentenced on February 27, 1997, (2) he filed a PC–1 petition on

---

17. The State argues that by pleading guilty, Gutermuth "waived his right to challenge the appropriateness of his sentence." Appellee's Br. at 16 (citing, *inter alia*, *Bennett v. State*, 813 N.E.2d 335, 338 (Ind.Ct.App.2004)). To the extent that *Bennett* and other cases hold that a defendant who submits to an open plea may not challenge the appropriateness of his sentence, we decline to follow those cases as contrary to supreme court precedent. *See Payne v. State*, 838 N.E.2d 503, 507–08 (Ind. Ct.App.2005) (citing *Tumulty v. State*, 666 N.E.2d 394 (Ind.1996)), *trans. denied* (2006).

18. As for Gutermuth's argument that the maximum sentence is inappropriate because

he is not one of the worst offenders, this Court has stated that "we must concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on the nature, extent, and depravity of the offense for which the defendant was sentenced, and what it reveals about the defendant's character." *Means v. State*, 807 N.E.2d 776, 789 (Ind.Ct.App.2004), *trans. denied*. Here, Gutermuth molested three young children living in his home who considered him a grandfather figure. Under these circumstances, the extraordinary depravity of Gutermuth's conduct and character is self-evident.

July 20, 2000, (3) on December 5, 2002, he filed an amended PC–1 petition, (4) on December 18, 2003, this court affirmed the denial of his PC–1 petition, (5) on November 9, 2004, our Supreme Court granted transfer and held that the post-conviction court should have dismissed Gutermuth's PC–1 petition for lack of jurisdiction, but that Gutermuth could challenge the sentence under PC–2, (6) *Blakely* was decided on June 24, 2004, (7) on March 29, 2005, Gutermuth filed a petition seeking permission to file a belated appeal under PC–2, which was granted on June 6, 2005, (8) on July 6, 2005, he filed a notice of appeal, and (9) on November 3, 2005, he filed his appellant's brief, which included a *Blakely* claim.

In a nutshell, the majority concludes that Gutermuth's appeal is timely based upon its determination that his case was not yet "final" because all avenues of appeal had *not* yet been exhausted, i.e., he could still appeal his conviction and sentence via a belated appeal filed under PC–2. In so holding, the majority rejects *Robbins v. State*, 839 N.E.2d 1196 (Ind.Ct.App. 2005), which held that an appeal is "final" for *Blakely* purposes when the right to pursue a *timely* appeal has lapsed, and that "timely" in this context does not include the prospect of filing a belated appeal under PC–2 rules. I was on the *Robbins* panel and concurred in its holding with respect to the meaning of "timely" in this context. Unless and until our Supreme Court holds that the *Robbins* view is incorrect, I continue to adhere to that point of view, and therefore respectfully dissent from the majority's determination that Gutermuth's *Blakely* challenge is timely.

MAY, Judge, concurring.

I agree with the majority that Gutermuth's sentence was proper, but I do not believe the trial court's finding "position of trust" as an aggravating circumstance to be acceptable under *Blakely*. The remaining proper aggravators were, however, sufficient to permit the trial court to sentence Gutermuth as it did. I accordingly concur in the result.

Gutermuth did not testify at his sentencing hearing. The position of trust aggravator was premised on information in the probable cause affidavit, which affidavit had been admitted into evidence without objection. I do not believe information contained in a probable cause affidavit, but not admitted or stipulated to by the defendant, can support the finding of an aggravating circumstance under *Blakely*.

In *Vela v. State*, 832 N.E.2d 610 (Ind.Ct. App.2005), we determined information in a pre-sentence investigation report could not support a finding of an aggravating circumstance, even though the defendant had stated the report was correct: "acknowledgement the pre-sentence report was correct is not, without more, an admission sufficient to support an aggravator based on the nature and circumstances of the crime." I believe the same is true of information in a probable cause affidavit. Gutermuth did not admit or stipulate to the information in the affidavit, so information included therein cannot properly support the finding of an aggravating circumstance under *Blakely*.

Transfer was not sought in *Vela*, and two panels of this court have since held such information could be utilized at sentencing without violating *Blakely* if the defendant admitted the information was correct. *See Sullivan v. State*, 836 N.E.2d 1031, 1036 (Ind.Ct.App.2005) (Sullivan did not object to or contest the accuracy of the probable cause affidavit), and *Davis v. State*, 835 N.E.2d 1102 (Ind.Ct.App.2005) (Davis made several corrections to his pre-sentence investigation report, then stated

he had no further corrections), trans. denied.[19]

I believe *Vela* was correctly decided and the facts before us—Gutermuth's failure to object to the incorporation of the probable cause affidavit as part of the factual basis for the guilty plea—are more like those in *Vela* than those in *Davis*. I would therefore find the position of trust aggravator runs afoul of *Blakely*.

**19.** The *Davis* panel noted the *Vela* holding that a defendant's acknowledgement the presentence report was correct is not, without more, an admission sufficient to support an aggravator based on the nature and circumstances of the crime. It then stated:

Our opinion is not necessarily contrary to *Vela's* holding, inasmuch as our opinion is factually distinguishable on two grounds: (1) we consider whether Davis admitted that he was on probation when he committed these crimes for purposes of *Blakely*, not whether he admitted the nature and circumstances of the crimes; and (2) Davis actually made corrections to the PSI, including a correction involving his release to probation, and confirmed the date on which he was released to probation.

835 N.E.2d at 1118 n. 9.