**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MATTHEW D. BARRETT**
Matthew D. Barrett, P.C.
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK BURKETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 09A04-1305-CR-262 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT
The Honorable Richard A. Maughmer, Judge
Cause No. 09D02-0708-FB-27

**September 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Mark Burkett appeals his sentence for criminal confinement as a class B felony. Burkett raises two issues which we revise and restate as:

I.      Whether the trial court abused its discretion in sentencing Burkett; and

II.     Whether Burkett's sentence is inappropriate in light of the nature of the offense and the character of the offender.

The State raises as an issue whether Burkett waived his arguments by the terms of his plea agreement. We affirm.

FACTS AND PROCEDURAL HISTORY

On August 13, 2007, Burkett had been living with Diana Lynn DeWeese for a short period. Burkett was involved in an altercation with DeWeese and at some point confined her to his residence by not letting her leave while he was armed with a billy club. As a result of the altercation, DeWeese suffered a laceration of the head, a broken hand, and a collapsed lung.

On August 16, 2007, the State charged Burkett with Count I, criminal confinement as a class B felony; Count II, criminal confinement as a class B felony; Count III, aggravated battery as a class B felony; Count IV, battery by means of a deadly weapon as a class C felony; Count V, battery resulting in serious bodily injury as a class C felony; and Count VI, domestic battery as a class A misdemeanor. On August 22, 2007, the State charged Burkett with Count VII alleging that Burkett was an habitual offender.

On May 31, 2011, Burkett entered a plea agreement with the State in which he agreed to plead guilty to Count I, criminal confinement as a class B felony, and the State agreed to dismiss the remaining counts. Burkett signed the plea agreement, and

2

acknowledged that he waived certain rights including appealing his sentence. At the guilty plea hearing, the court reviewed the plea agreement and informed Burkett that he was waiving his right to appeal his sentence.

At the sentencing hearing, the court found Burkett's guilty plea as a mitigating circumstance but observed that it was offset by the benefit of the bargain. The court also found Burkett's "poor medical condition" as a mitigator, as well as the fact that his minor child has some basis of expectation of support as a result of Burkett's receipt of disability payments. Sentencing Transcript at 19. The court found Burkett's criminal history as an aggravating circumstance. The court also stated:

> The fact that this criminal confinement conviction also was accompanied by a pretty substantial thumping, a beating I guess for the Court of Appeals record here. This victim is now on disability. She didn't suffer from any kind of a disability before. She is now legally blind as a result of the beating that she took. And I find that those are aggravating circumstances or cause me to consider this particular offense to be one which would cause an appropriate sentence to be one at the higher end of the spectrum.

Id. at 20. The court sentenced Burkett to twenty years, and then advised Burkett that he was entitled to take an appeal.

## DISCUSSION

We first address whether Burkett waived his right to appeal his sentence. The State contends that Burkett waived his right to appeal his sentence based upon the terms of the plea agreement. The State argues that, while the plea agreement allows Burkett to appeal any "illegal sentence," Burkett makes no argument on appeal that the sentence imposed by the trial court was illegal or that the sentence exceeded the maximum punishment allowed by statute for his crime.

3

In his reply brief, Burkett argues that he did not knowingly, voluntarily, and intelligently waive his right to appeal the discretionary sentence imposed by the trial court. He points to the following exchange which occurred at the sentencing hearing after the court had sentenced him:

THE COURT: Now I need to ask you if you wish to – if you know whether or not you wish to file an appeal or a motion to correct error?

\* \* \* \* \*

DEFENDANT: I'll waive it.

THE COURT: You'll wait to decide? Okay. Do you understand that you have thirty days . . . .

[Burkett's Counsel]: I believe he said he'll waive it. But he can consider it.

THE COURT: Okay.

[Burkett's Counsel]: At this moment I don't believe there is an appealable issue but I'll advise him.

Sentencing Transcript at 22. Burkett appears to rely on the foregoing exchange for his argument that he "could not have knowingly, voluntarily, and intelligently agreed to waive his appellate rights because his counsel's comments indicate that an appeal of the sentence would still be possible and it had not yet been discussed with [him]." Appellant's Reply Brief at 3. Without citation to the record, Burkett argues that "[a]lthough there are provisions in the Plea Agreement that discuss waiver of appellate rights, it is clear [his] counsel failed to explain the waiver provisions to [him]." Id. at 3. Without citation to authority, Burkett argues that the State waived its right to object because it stood silent when the trial court discussed Burkett's right to appeal the

4

sentence and when Burkett's counsel made the foregoing comments. Burkett also argues that the plea agreement is ambiguous because "conflicting language exists as to whether [he] was giving up his right to challenge his sentence as inappropriate (or illegal) under Rule 7(B)." Id. at 4.

The Indiana Supreme Court has held that "a defendant may waive the right to appellate review of his sentence as part of a written plea agreement." Creech v. State, 887 N.E.2d 73, 75 (Ind. 2008). In Creech, the Court adopted the view of the Seventh Circuit which declared "that defendants 'may waive their right to appeal as part of a written plea agreement . . . as long as the record clearly demonstrates that it was made knowingly and voluntarily.'" Id. (quoting United States v. Williams, 184 F.3d 666, 668 (7th Cir. 1999)). The Court also indicated that a trial court's statements that led a defendant to believe that he retained the right to appeal at the sentencing hearing were not grounds to circumvent the terms of the plea agreement. Id. at 76. Specifically, the Court held that by the time the trial court erroneously advised the defendant of the possibility of appeal, the defendant had already pled guilty and received the benefit of his bargain. Id. at 77.

Here, the plea agreement states:

> Defendant after consulting with counsel, hereby knowingly and voluntarily waives the following rights guaranteed to me by the Constitution of the United States and Indiana. Defendant acknowledges that he/she:
>
> * * * * *
>
> (2) has been informed that by his plea he/she waives his/her rights to:

(e)    . . . . Because the Defendant is pleading guilty, he/she understands that there will be no appellate review of the sentence. The Defendant acknowledges that he/she has discussed this matter with counsel, and hereby makes a knowing and voluntary waiver of appellate review of the sentence imposed by the trial court. Defendant may still appeal any illegal sentence which may be imposed.

(9)    hereby waives any right to challenge the trial court's finding on sentencing, including the balancing of mitigating and aggravating factors and further waives his right to have the Indiana Court of Appeals review his sentence under Indiana Appellate Rule 7(B).

Appellant's Appendix at 47-48.

The following exchange between the court and Burkett occurred at the guilty plea hearing:

Q    I have before me, Mark, what purports to be a plea agreement with your signature on it, did you read and sign this?

A    Yes.

Q    Did you discuss it with [your counsel]?

A    Yes, I did.

Q    It says you are going to plead guilty to Count 1, the State is going to dismiss the remaining counts and the habitual offender allegation. The sentence will imposed [sic] by the court I suppose at a sentencing hearing which could be six to twenty years in prison as I just explained to you and a fine of nothing up to ten thousand dollars. Does this also have a provision on it that he waives the right to challenge the court's findings on sentencing? Yeah, you waive the right to appeal. You are giving me a discretion to impose the sentence on you, Mark, but you are also waiving the right to question my discretions. So if I give you twenty years you can't appeal that decision that's the worst case scenario, do you understand?

6

A     Yes.

Q     That is what your plea agreement provides for?

A     Yes.

Q     Okay, counsel is that the agreement that you've entered into?

[Burkett's Counsel]:     It is, your honor.

[Prosecutor]:     Yes.

Guilty Plea Transcript at 8-9.

We observe that under Creech the fact that the trial court made a statement at the sentencing hearing, after imposing a sentence, informing Burkett that he was entitled to take an appeal does not invalidate Burkett's plea in which he received the benefit of his bargain or invalidate his waiver of his right to appeal. To the extent that the plea agreement stated that Burkett "may still appeal any illegal sentence which may be imposed," we observe that "illegal" sentences are generally viewed as sentences that exceed statutory authority. See Hull v. State, 799 N.E.2d 1178, 1181 (Ind. Ct. App. 2003) ("Although we typically review a sentence for an abuse of discretion, an illegal sentence is in the nature of a 'void' judgment and can be attacked directly or collaterally at any time."); Williams v. State, 759 N.E.2d 661, 665 (Ind. Ct. App. 2001) ("The effect of the trial court's failure to give Williams credit for pre-sentence jail time is that Williams' sentence exceeds the statutory maximum and is an illegal sentence."). We cannot say that the provision addressing an "illegal sentence" in the plea agreement creates an ambiguity or allows Burkett to raise the issues of whether the trial court abused

7

its discretion regarding aggravators and mitigators or whether his sentence is inappropriate.

Based upon the express language in the plea agreement and the trial court's advisement at the guilty plea hearing, we conclude that Burkett waived his right to appeal his sentence with respect to whether the court abused its discretion regarding aggravators and mitigators and whether his sentence is inappropriate. See Creech, 887 N.E.2d at 75 (holding that a defendant may waive the right to appellate review of his sentence as part of a written plea agreement); Brattain v. State, 891 N.E.2d 1055, 1057 (Ind. Ct. App. 2008) (nothing that the defendant waived his right to appeal his sentence where the plea agreement provided in part that the defendant waived the right under Ind. Appellate Rule 7 to review of the sentence imposed); cf. Bonilla v. State, 907 N.E.2d 586, 590 (Ind. Ct. App. 2009) (concluding that the defendant did not waive the right to appeal his sentence where the trial court advised the defendant that he may have waived the right to appeal but then promptly advised him of the right to appeal and noting that the advisement occurred at the guilty plea hearing before the defendant received the benefit of his bargain and then occurred again at the sentencing hearing), trans. denied; Ricci v. State, 894 N.E.2d 1089, 1094 (Ind. Ct. App. 2008) (holding that the defendant had not waived the right to appeal his sentence under Creech because, unlike in Creech, the trial court "clearly and unambiguously stated at the plea hearing that it read the plea agreement and that, according to its reading of the agreement, [the defendant] had not surrendered the right to appeal his sentence"), trans. denied.

Even if we were to conclude that Burkett did not waive the right to appeal his sentence, Burkett would not prevail. With respect to Burkett's argument that the trial court improperly considered aggravators and mitigators, we review the sentence for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id.

A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence – including a finding of aggravating and mitigating factors if any – but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Id. at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491. The relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id.

Burkett argues that the trial court abused its discretion by improperly assessing the weight to be assigned to his criminal history, guilty plea, health problems, and minor child's receipt of child support based on his disability status. These arguments are, in essence, a request for this court to reweigh those factors, which we may not do. See id.

9

(holding that the relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse).

Burkett also argues that DeWeese's bodily injuries was an improper aggravator. To the extent that he suggests that the court improperly considered an element of a dismissed charge, we cannot say that the court abused its discretion. See Bethea v. State, 983 N.E.2d 1134, 1145 (Ind. 2013) (holding that the trial court did not err by giving significant weight to the facts presented to it relating to dismissed charges because the State's obligations under the plea agreement were fulfilled upon dismissal of the remaining counts and it owed the defendant no further duty to omit these facts from the aggravating circumstances consideration).

Burkett further contends that the "use of a billy club and other physical force during the commission of the crime are improper aggravators as a matter of law because these actions were material parts of the underlying offense of criminal confinement." Appellant's Brief at 8. A material element of a crime may not be used as an aggravating factor to support an enhanced sentence. McElroy v. State, 865 N.E.2d 584, 589 (Ind. 2007). However, when evaluating the nature of the offense, the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors. Id. The trial court must then detail why the defendant deserves an enhanced sentence under the particular circumstances. Id.

We conclude that the court considered the beating and injuries not as material elements of the crime but as the nature and circumstances of the offense. Consequently, the trial court did not abuse its discretion by considering the nature and circumstances as

an aggravating factor. See Sipple v. State, 788 N.E.2d 473, 482 (Ind. Ct. App. 2003) (holding that the trial court's explanation was significantly more than the mere recitation of the elements of the offense, and adequately supported the finding of the aggravating circumstance), trans. denied; Armstrong v. State, 742 N.E.2d 972, 981 (Ind. Ct. App. 2001) (holding that the trial court's sentencing statement "makes clear that it was not the pointing or shooting of the handgun that was the aggravating circumstance but the manner in which those offenses were committed" and "[t]his was a proper use of the nature and circumstances of the crimes committed as an aggravating factor").

Lastly, Burkett argues that the trial court failed to consider his remorse when he apologized to DeWeese at the sentencing hearing and his agreement to pay for DeWeese's medical expenses. "The finding of mitigating factors is not mandatory and rests within the discretion of the trial court." Ellis v. State, 736 N.E.2d 731, 736 (Ind. 2000). The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor. Gross v. State, 769 N.E.2d 1136, 1140 (Ind. 2002). "Nor is the court required to give the same weight to proffered mitigating factors as the defendant does." Id. Further, the trial court is not obligated to explain why it did not find a factor to be significantly mitigating. Sherwood v. State, 749 N.E.2d 36, 38 (Ind. 2001).

With respect to Burkett's argument regarding his remorse, a trial court's determination of a defendant's remorse is similar to a determination of credibility. Pickens v. State, 767 N.E.2d 530, 534-535 (Ind. 2002). Without evidence of some impermissible consideration by the court, we accept its determination of credibility. Id.

11

The trial court is in the best position to judge the sincerity of a defendant's remorseful statements. Stout v. State, 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), trans. denied.

The record reveals that Burkett's trial counsel asked Burkett if he wanted to apologize to DeWeese at the sentencing hearing, and the following exchange occurred:

> A       Well, her and I met and were together briefly. We were both chronic alcohol users. . . .
>
> THE COURT:       He asked you if you'd like to apologize to her.
>
> A       Yes, I do. I'm approaching that. Trying to get up to that. And after a few weeks I realized the situation was volatile . . .
>
> * * * * *
>
> A       I don't clearly remember what happened that day. We were both very drunk. By looking at the – what was submitted in the deposition or whatever it was – the disclosure it looked bad and I was probably responsible for them injuries. I'm very sorry. I wish the day would have never happened.

Sentencing Transcript at 12. Burkett also stated: "The only way I can do anything to help – to rectify this is to at least pay some of the bills off that I'm responsible for." Id. at 14. Upon questioning by the court, Burkett stated that he had not paid anything yet. The trial court was able to consider Burkett's statements, and based upon our review of the sentencing transcript and record we cannot say that the trial court abused its discretion by not finding Burkett's alleged remorse or willingness to pay DeWeese's medical expenses to be mitigating circumstances.

With respect to Burkett's argument that his sentence is inappropriate, Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is

inappropriate in light of the nature of the offense and the character of the offender."

Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Our review of the nature of the offense reveals that Burkett had been living with DeWeese for a short period of time when he was involved in an altercation with her. He confined DeWeese to his residence by not letting her leave while he was armed with a billy club. As a result of the altercation, DeWeese suffered a laceration of the head, a broken hand, and a collapsed lung. At the sentencing hearing, DeWeese testified that she suffered extensive loss of her eyesight because of the incident, became legally blind, had medical bills totaling over $36,000, is still undergoing treatment by a neurologist because of brain damage, and is no longer able to work.

Our review of the character of the offender reveals that Burkett pled guilty to criminal confinement and the court dismissed Count II, criminal confinement as a class B felony; Count III, aggravated battery as a class B felony; Count IV, battery by means of a deadly weapon as a class C felony; Count V, battery resulting in serious bodily injury as a class C felony; Count VI, domestic battery as a class A misdemeanor; and Count VII alleging that Burkett was an habitual offender.

Burkett has convictions for operating a vehicle with an excess of .10% blood alcohol in 1992, battery against a two-year-old child resulting in bodily injury in 1995, and conversion in 2003. He was charged with domestic battery as a class A misdemeanor on August 18, 1999, which was dismissed.[1] In 2003, the State charged Burkett with

---

[1] The presentence investigation report indicates that Burkett was charged with battery resulting in

13

conspiracy to commit dealing in cocaine and theft, but these charges were also dismissed. In 2004, he was charged with invasion of privacy, and this charge was dismissed. At the time of the presentence investigation report, Burkett had a pending charge of public intoxication. He violated home detention by consuming alcohol in 1996, violated probation in 2001 by testing positive for cocaine, and violated probation in 2006. Burkett failed to report to the Cass County Probation Department on May 11, 2011 for an update interview. He admitted to the "illegal use of cocaine, inhalants, downers, hallucinogens, and intravenous drug use." Appellant's Appendix at 32. He has been court-ordered to complete treatment for substance abuse in the past. The probation officer recommended a maximum sentence of twenty years. Waiver notwithstanding, we conclude after due consideration that the sentence imposed by the trial court is not inappropriate.

For the foregoing reasons, we affirm Burkett's sentence.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.

---

bodily injury on August 18, 1999, but his counsel indicated at the sentencing hearing that Burkett reported that the August 18, 1999 charge was domestic battery as a class A misdemeanor.